**Dorothy POLLOCK, Plaintiff,**

v.

**WELCOME WAGON INTERNATIONAL, INC., a Delaware corporation, Defendant.**

**Civ. No. 3888.**

United States District Court
D. North Dakota,
Southeastern Division.

Nov. 13, 1961.

Carl V. Peterson, of Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., for plaintiff.

Lowell W. Lundberg, of Cupler, Tenneson, Serkland & Lundberg, Fargo, N. D., for defendant.

RONALD N. DAVIES, District Judge.

Plaintiff herein commenced this action to recover for alleged breach of contract. It appears from the pleadings that plaintiff was first employed by defendant in 1940, her duties being those of a "hostess" for defendant in Fargo, North Dakota. A written contract was executed defining plaintiff's duties and the conditions of her employment. This contract remained in effect until 1949 when a new contract was entered into by the parties, changing plaintiff's duties from that of "hostess" to "supervisor" for a stated area in North Dakota. A similar contract was entered into by the parties in 1950 employing plaintiff as "supervisor" for certain areas in Minnesota.

Shortly after the death of her husband in 1958, plaintiff wrote to Defendant ex-

pressing concern for her future. Plaintiff stated that her home was among those being taken by the Army Corps of Engineers for flood control purposes and she was forced to move therefrom. Plaintiff indicated she was reluctant to move into an apartment for several reasons, among which was that if she continued working for defendant she would have to rent a downtown office, parking space for her' car and employ a secretary.

To solve the problem, plaintiff proposed building a house on a lot she owned, from which her duties under the contracts with defendant could be performed. The house was to have an office, space for storage of supplies, a garage, and was to be suitable for entertainment of defendant's customers. Plaintiff felt that " * * * a home is security and not one of 2 bedrooms but one with three which will have a better resale value in case I have to dispose of it. I have never ,ived [sic] in any thing but a home all my life and I am afraid I could not take an apartment in a small city."

She inquired of the defendant " * * * what my chances are for my work in Welcome Wagon and what security I will have of my job, before I get too far into what will be my earning power." and "If you think that by any chance I can not do your job for you in Welcome Wagon I surely would like to know as this may make me change plans which I would like to carry out."

Defendant responded by letter dated August 27, 1958, expressing sympathy for plaintiff's loss of her husband and went on to state, among other things, " * * * Your job is yours as long as you want it and you are really a young woman compared to some of the real successful girls still carrying on in Welcome Wagon."

Plaintiff then built the proposed house from which she continued her duties as "supervisor" under the contracts. In January, 1961, a new contract was entered into between the parties which expanded the area in North Dakota which plaintiff was to supervise. In February, 1961, a second contract was executed covering the Minnesota area in which plaintiff was to be employed.

On March 13, 1961, plaintiff's employment was terminated pursuant to the terms of the contracts, both of which (as well as the previous ones) contained the following provisions:

"13. This employment shall continue so long as it is the mutual desire of the parties hereto. It may be terminated at any time by either party without cause. If terminated before the end of a period of six months from date of contract of employment, the party terminating said employment shall give the other party one day's written notice of said termination. If said employment has extended beyond the six months' period either party may terminate the same upon two weeks' written notice to the other party, and the payment or tender by the Company to the Supervisor of two weeks' average commissions, shall be equivalent to two weeks' notice.

"Upon the termination of this employment by either party, the Supervisor shall receive her commissions on collections made by the Company up to the day of the termination of said employment, but it is expressly understood and agreed by the parties that no commissions shall be paid to the Supervisor on collections made by the Company, after termination of said employment. ·

"14. This agreement constitutes and expresses the whole agreement of said parties hereto, in reference to any employment of Supervisor by said Company, and in reference to any of the matters or things herein provided for or heretofore discussed or mentioned in reference to such employment, all promises, representations and understandings relative thereto being herein merged, and no amendments nor modifications of this contract shall be binding upon either party hereto, unless the same is in writing signed by both parties to this contract.

"15. No agent nor representative of Company has any authority to make any promises or representations other than those expressly set out in this contract."

Plaintiff contends that defendant's letter written August 27, 1958, guaranteed and promised that plaintiff's job with the defendant was hers as long as she wanted it, and that in consideration of that promise, plaintiff did construct a new home containing an office and entertainment facilities as well as incurring numerous expenses for the publication of literature and advertising, all of which plaintiff did relying upon the promise of the defendant. The plaintiff further alleges that by terminating her employment in March of 1961 the defendant breached the contract of employment, "as long as you want it."

The defendant answered, admitted writing the letter of August 27, 1958, but denied that it constituted a contract between the parties, and contends that at all times the relationship between the parties was defined by written contracts, specifically those executed in January and February, 1961.

Defendant has filed a Motion for Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S. C.A., which provides in part that:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

Defendant contends that plaintiff's employment was at all times defined in detail by a series of formal contracts for an indefinite term, and thus terminable at will by either party, and that any statements in the letter of August 27, 1958, were mere statements of sympathy, encouragement and confidence, together with hopes and expectations for a continued satisfactory relationship between plaintiff and defendant. Further, that any statements to the contrary lacked

sufficient clarity of intent and definiteness to constitute a binding offer of lifetime employment, particularly in view of the express provisions of the formal written contracts of employment executed both before and after the August 27, 1958, letter.

Plaintiff, in opposition to the Motion, argues that the letter did in fact make a promise to the plaintiff for permanent, lifetime employment so long as she desired to work for the defendant and that in reliance upon the promise, and in addition to her services, she gave good and valuable consideration for that promise in building the home which provided office space, garage and storage space, and in investing sums of money in supplies. In the words of the plaintiff, "[S]he more or less purchased her employment by giving extra consideration over and above her services and such a contract does have mutuality of obligation and is not terminable at will by either party."

The rule, as stated in 135 A.L.R. 654, is that:

"* * * where the employee has given consideration additional to the services incident to the employment, or, as it is sometimes stated, where the employee purchases the employment, in the absence of a statute, other terms in the contract, or circumstances to the contrary, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, is valid and enforceable and not against public policy, and continues to operate as long as the employer remains in the business and has work for the employee, and the employee is able and willing to do his work satisfactorily and does not give good cause for his discharge, a discharge without good cause constituting a breach of such a contract entitling the employee to recover damages therefor."

In Fibreboard Products v. Townsend, 9 Cir., 202 F.2d 180, 182, the Court held:

"A contract for permanent employment is only a contract for an indefinite period of time and termi-

nable at the will of either party, *unless it is based upon some consideration other than the services to be rendered."*

In Stevens v. G. L. Rugo & Sons, Inc., 209 F.2d 135, 138, the United States Court of Appeals for the First Circuit had this to say:

"The word 'permanent' is not infrequently used in contracts of employment, but not in its absolute sense of everlasting or enduring forever without change, or even as enduring for life. It is used in a relative sense to distinguish transient or temporary employment for some fixed, and usually limited time, as for a period of days, weeks, months or even perhaps years, or until the completion of a given piece of work or the happening of some event. Its meaning is elastic, depending upon the context in which and the background against which it is used, but its meaning is not for that reason so indefinite that a promise of permanent employment cannot be enforced. As used in a contract of employment it 'may fairly be held to mean that the employee is to serve so long as he remains able to do his work properly, and the employer continues to be engaged in the business to which the hiring related.' 1 Williston, Contracts § 39 (Rev.Ed.1936). This is the sense in which the word was interpreted in Carnig v. Carr, supra, wherein the court said in 167 Mass. at page 547, 46 N.E. at page 118:

" 'To ascertain what the parties intended by "permanent employment," it is necessary to consider the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into account, the words would be commonly understood; for it fairly may be assumed that the parties used and understood them in that sense. * * *' "

The defendant contends that the letter of August 27, 1958, was merely a statement of sympathy and encouragement, together with hopes and expectations of a continued satisfactory relationship between the parties, while plaintiff contends the letter was an offer of permanent employment upon which plaintiff relied and upon which she acted.

This appears to the Court to be an ultimate fact, and it is not a proper function of the Court to decide that or any other ultimate fact on Motion for Summary Judgment.

The Court being unable to say that no genuine issue of fact is presented, the defendant's Motion for Summary Judgment must be, and it is hereby denied.