Wayne WADESON, Plaintiff
and Appellant,

v.

AMERICAN FAMILY MUTUAL INSUR-
ANCE COMPANY, American Family
Life Insurance Company, American
Family Financial Services, and Ameri-
can Standard Insurance Company of
Wisconsin, doing business as The
American Family Insurance Group, De-
fendants and Appellees,

Russell W. Lemons and Clayton H.
Nelson, Defendants.

Civ. No. 10421.

Supreme Court of North Dakota.

Jan. 13, 1984.

McConn, Fisher & Thune, Grand Forks, for plaintiff and appellant; argued by Patrick W. Fisher, Grand Forks.

Letnes, Marshall, Fiedler & Clapp, Grand Forks, for defendant and appellee American Family Ins.; argued by Jay H. Fiedler, Grand Forks.

SAND, Justice.

This is an appeal by Wayne Wadeson from that portion of a judgment entered on a jury verdict dismissing Wadeson's claims against the corporate defendants [American Family] of age discrimination and wrongful discharge. We affirm.

Wadeson has presented the following issues for review:

"I. Wadeson provided consideration independent of the personal services to be performed as District Manager in the form of monetary investments in his district and the Trial Court erred in refusing to instruct on Wadeson's theory that he could be discharged only for good cause and in failing to submit that question to the jury for its determination in the special verdict form.

"II. The Trial Court erred in instructing the jury that age must be 'the' determining factor in the decision to terminate employment and the Court's instruction on age discrimination as a whole was inadequate, misleading and confusing to the jury to the prejudice of the Plaintiff Wadeson."

Wayne Wadeson began a career with American Family as an agent in 1960. From the time of his appointment as district manager of district 381 until 1 January 1979, Wadeson's immediate supervisor as state director was Elgin Lemon. Throughout his career with American Family, Wadeson received numerous congratulatory letters and awards.

Russell Lemons replaced Elgin Lemon as state director on 1 January 1979. Relations between Wadeson and Lemons began poorly and deteriorated until on 13 September 1979 Lemons gave Wadeson a letter terminating Wadeson as district manager. Efforts to reach an accommodation were fruitless and Wadeson's termination became finally effective on 30 November 1979.

Wadeson brought suit against American Family, Russell Lemons, and Clayton Nelson, who was American Family's regional vice president for the region including North Dakota. While several claims were alleged, only those dealing with age discrimination and wrongful discharge are at issue in this appeal. Wadeson's claims against the individual defendants, Lemons and Nelson, are not at issue in this appeal. A judgment against American Family for termination benefits is also not at issue in this appeal.

■ We are met at the outset with American Family's assertion that Wadeson was not discharged at all but voluntarily terminated his employment. We find this assertion to be without merit. The termination letter Lemons gave to Wadeson began by stating "I am terminating you today with the opportunity to be re-hired." That sentence was followed by several conditions to be met by Wadeson in order to be rehired. That Wadeson failed to avail himself of the opportunity to be rehired did not make his termination any less involuntary. Wadeson was involuntarily discharged from his employment as a district manager of American Family.

## I. DISCHARGE FOR CAUSE

Section 34–03–01, N.D.C.C., provides:

"*34–03–01. Termination of employment at will—Notice required.* An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title."

The trial court instructed the jury that:

"North Dakota law recognizes an implied covenant of good faith and fair dealing in all contracts. In employment contracts, this means that neither party may do anything in bad faith that will injure the rights of the other to receive the benefits of the employment agreement.

"In order for Wayne Wadeson to prevail on this count, the preponderance of the evidence must show that he was dealt with unfairly and in bad faith in the termination of his employment contract. Factors which you may consider in determining whether Defendants breached their duty of good faith and fair dealing to Wayne Wadeson are duration of employment, commendations and promotions or lack thereof, employee evaluations, job performance, existing personnel policies, and any assurances or representations by the defendants that shows an implied promise by the employer not to act arbitrarily or unfairly in terminating his employment contract.

"The law, however, does not forbid a termination for legal cause related to the employer's legitimate interest in running the business."

Wadeson does not complain of that instruction and says it was required under one of his theories of recovery. American Family, while arguing that the instruction went beyond North Dakota statutory requirements, concedes that the instruction is consistent with good faith rules adopted by other jurisdictions in cases dealing with allegations of wrongful discharge from employment.

In the special verdict form, the jury was asked and responded as follows on this matter:

"D. Did the Defendants fail to deal in good faith and fairly in their termination of Wayne Wadeson?

"ANSWER: No."

■ Because the jury found that American Family did not "fail to deal in good faith and fairly" in the termination of Wadeson, it is clear that American Family was not prejudiced by the instruction. Therefore, it is unnecessary for us to decide whether or not the jury was properly instructed on the matter of good faith and fair dealing.

Asserting that he provided consideration independent of the personal services he was to perform, Wadeson argues that the trial court erred in refusing to instruct the jury on his theory that he could be discharged only for good cause.

Wadeson relies on *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal. Rptr. 722 (1980), *Rabago-Alvarez v. Dart Industries, Inc.*, 55 Cal.App.3d 91, 127 Cal. Rptr. 222 (1976), *Hrab v. Hayes-Albion Corp.*, 103 Mich.App. 90, 302 N.W.2d 606 (1981), *Bussard v. College of Saint Thomas, Inc.*, 294 Minn. 215, 200 N.W.2d 155 (1972), and *Pollock v. Welcome Wagon International, Inc.*, 199 F.Supp. 8 (D.N.D. 1961), for the proposition that one who has given independent or special consideration can only be discharged from his employment for good cause.

We are not persuaded that those decisions compel the conclusion that Wadeson could be discharged only for good cause. In *Rabago-Alvarez, supra*, the plaintiff's employer had specifically assured her that she would not be discharged arbitrarily but only for good cause. *Cleary, Hrab, Bussard*, and *Pollock, supra*, merely allowed the plaintiff in each case an opportunity to attempt to prove a wrongful discharge by reversing a judgment entered on an order sustaining a demurrer, reversing a summary judgment, or denying a motion for summary judgment.

The *Cleary* court did not apply the "independent consideration" rule in construing California Labor Code § 2922 (formerly Cal.Civ.C. § 1999, from which our § 34–03–01, N.D.C.C., was derived). After quoting the independent consideration rule set forth in 1 Witkin, Summary of California Law § 197, pp. 790–791 (8th ed. 1973) that

"... [a] contract for 'permanent employment' calls for the following distinction: (a) If it is supported by some *independent consideration*, it is not terminable at will, ... If not terminable at will, it is construed as an agreement for employment for a reasonable period....",

the court noted that "But only a few California courts have utilized the 'independent consideration' qualification as justification for imposing liability on an employer for wrongful discharge." *Cleary, supra*, 168 Cal.Rptr. at 725–726. The court went on to embrace the rule stated in *Patterson v. Philco Corp.*, 252 Cal.App.2d 63, 65, 60 Cal.Rptr. 110 (1967):

"'... The employer may be subject to damages for terminating the contract at will when such termination would be a violation of (a) public policy [citation], (b) a statute [citations], or (c) when the employee was engaged contractually to serve so long as he performed to the satisfaction of the employer [citation].' In our view, the *Patterson* summary more accurately defines the present state of the law." *Cleary, supra*, 168 Cal. Rptr. at 726.

Without referring to § 34–03–01, N.D. C.C., we said in Syllabus 2, *Sand v. Queen City Packing Company*, 108 N.W.2d 448 (N.D.1961), that "In the absence of a statute to the contrary, an employer has the right to discharge his employees, with or without cause, ..." While we recognize that there have been "inroads on the absolute right of an employer to terminate at-will employees" (*Cleary, supra*, 168 Cal. Rptr. at 726), none have been so wide or so deep as to support Wadeson's theory that he could be discharged only for good cause.

The independent consideration that Wadeson points to in support of his argument that he could be discharged only for good cause consists of

"... investing very substantial amounts of his money each year in the building of his district sales force. His annual investment would be at least $15,000.00 to $20,000.00 per year in recent times...."

As evidence thereof, Wadeson points to copies of his U.S. Individual Income Tax Returns showing deductions for business expenses for such things as cash awards and prizes he offered as special incentives to his agents, automobile expenses (including depreciation), advertising, postage, supplies, telephone, promotion, travel, entertainment, utilities, repairs, insurance, and depreciation on a house.

■ Even if we were inclined to adopt independent consideration as an exception to the terminable at-will rule in an appropriate case, we do not do so in this case. The types of things that Wadeson points to do not constitute independent consideration for his employment. While Wadeson's investment of money in building his district may have inured to the benefit of American Family, it is also clear that Wadeson stood to gain financially if his agents improved their efforts and sold more insurance. Wadeson testified that building his sales force for future years "would benefit me and larger or future larger annual incomes plus a much larger retirement check." In addition, the district manager's agreement entered into by Wadeson and American Family specifically provides in Section 2:

"2. The Manager accepts the appointment and agrees:

a. To recruit, train, supervise and motivate agents in his district, subject to the direction of the Companies.

b. To promote effectively the sale of all of the kinds of insurance and loans written by the Companies.

\* \* \* \* \* \*

f. To pay all expenses incurred by him in the performance of his duties under this agreement, except as herein otherwise provided...."

■ The fact that American Family "publications represented employment with American Family as a 'lifetime opportunity'

and 'permanent and stable business' ", as Wadeson asserts, does not bring Wadeson's employment within the scope of cases such as *Rabago-Alvarez v. Dart Industries, Inc., supra,* where the employer had specifically said that discharge would only be for good cause. We do not read such statements used in recruiting new agents to be promises either of permanent employment or that one will be discharged only for good cause. Further, the district manager's agreement provides that it "may be terminated by any party as to its interest by giving written notice to the other" and that any "alteration or modification of its terms must be made by an agreement in writing signed" by the parties. Nor has Wadeson pointed to any public policy or statute, other than that discussed in the next section of this opinion, to the contrary so as to fall within the scope of cases such as *Sand v. Queen City Packing Company, supra,* or *Patterson v. Philco Corp., supra.*

The instruction given on an implied covenant of good faith and fair dealing was as favorable to Wadeson as he was entitled to under the evidence.

"... The good faith standard offers the flexibility necessary to deal with basic considerations such as length of service, past job performance, type or level of employment, and the economic condition or needs of the firm....

"A good faith standard does not force employers to retain workers who are clearly unsatisfactory; the goal should be to limit the employer's discretionary power in order to prevent bad faith discharges, not to give employees permanent job security...." Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith,* 93 Harvard Law Review 1816, 1840 (1980).

■ The evidence did not warrant an instruction on Wadeson's theory that he could be discharged only for good cause. "Error cannot be based on refusal to give requested instructions to the jury which are not warranted by the evidence." Sylla-

bus 3, *Munro v. Privratsky*, 209 N.W.2d 745 (N.D.1973). The trial court did not err in failing to give an instruction on Wadeson's theory that he could only be discharged for good cause.

## II. AGE

One count of Wadeson's complaint against American Family alleged a violation of the Age Discrimination In Employment Act of 1967[1], 29 U.S.C.S. §§ 621–634.[2] Section 623 provides:

"*(a) Employer practices.* It shall be unlawful for an employer ... to discharge any individual ... because of such individual's age; ...

\*     \*     \*     \*     \*     \*

(f) ... It shall not be unlawful for an employer ...

1. Wadeson apparently did not attempt to establish liability under § 34–01–17, N.D.C.C. (S.L. 1965, ch. 235, §§ 1, 2, as amended by S.L.1975, ch. 106, § 358), which provides:

   "*34–01–17. Unlawful to discriminate because of age—Penalty.* No person carrying on or conducting within this state any business requiring employees shall refuse to hire, employ, or license, or shall bar or discharge from employment, any individual solely upon the ground of age; when the reasonable demands of the position do not require an age distinction; and, provided that such individual is well versed in the line of business carried on by such person, and is qualified physically, mentally, and by training and experience to satisfactorily perform the duties assigned to him or for which he applies. Nothing herein shall affect the retirement policy or system of any employer where such policy or system is not merely a subterfuge to evade the purposes of this section. Any person who violates any of the provisions of this section shall be guilty of a class B misdemeanor."
   We note that discrimination on the basis of age is also prohibited by Chapter 14–02.4, N.D. C.C. (S.L.1983, ch. 173).

2. No question has been raised as to Wadeson's status as an employee for purposes of the ADEA, as distinguished from an independent contractor. *See, Equal Employment Opportunity Commission v. Zippo Manufacturing Company*, 713 F.2d 32 (3rd Cir.1983).

3. Along with instructions on damages for age discrimination, the trial court gave the following instructions on age discrimination:

   "AGE DISCRIMINATION IN EMPLOYMENT ACT

(1) to take any action otherwise prohibited ... where the differentiation is based on reasonable factors other than age;

\*     \*     \*     \*     \*     \*

(3) to discharge or otherwise discipline an individual for good cause."

Section 631 provides that the Act's prohibitions apply to "individuals who are at least 40 years of age but less than 70 years of age."

As part of its instructions on this matter, the trial court instructed the jury that "In order to prevail on his claim, the plaintiff must prove, by a preponderance of the evidence: ... That his age was the determining factor that prompted the defendant to take action."[3] Wadeson asserts that

"The plaintiff claims that the defendants discriminated against the plaintiff by terminating plaintiff because of his age.

"Under federal law, it is unlawful for an employer to lay off or otherwise discriminate against any employee because of that employee's age, when the employee's age is between forty and seventy.

"In order to prevail on his claim, the plaintiff must prove, by a preponderance of the evidence:

1. That he was within the protected age group, that is, between the ages of forty and seventy.

2. That he was discharged, and

3. That his age was the determining factor that prompted the defendant to take action.

"If you find that the plaintiff has established each of these elements of his claim, you will then consider the defendant's defenses, as to which the defendant bears the burden of proof by a preponderance of the evidence.

"To summarize, it is the burden of the plaintiff to prove to your satisfaction by a preponderance of the evidence that the defendant discriminated against him because of his age.

"In the event you are convinced by the evidence that the defendant did discriminate against the plaintiff, then you must determine the amount of damages the plaintiff has sustained.

"A 'willful' termination under the provisions [of] this act means an intentional, conscious, and deliberate termination of an employee for the reason of age."
"ECONOMIC SAVINGS AND AGE DISCRIMINATION
"Federal law provides that an employee may not be discharged because of his age. Where economic savings and expectation of

the instructions were erroneous and require a reversal, arguing that he "need only prove that age was 'a' determining factor in the adverse employment decision and not 'the' determining factor."

Wadeson argues that the trial court's instructions "misled the jury into thinking that Wadeson's age had to be the sole reason he was discharged." Wadeson's requested instruction stated in part that he had the burden of proving "that one factor behind his discharge was his age, and that his age in fact made a difference in the decision to discharge him." The instructions given, however, were in harmony with the allegation in Wadeson's complaint that he was discharged *"solely* because of his age."[4] (Emphasis added).

Although the instructions given may have been somewhat lacking in detail, we do not deem it necessary to determine if Wadeson's proposed instructions would have been more correct.

In *State v. Van Horne,* 71 N.D. 455, 2 N.W.2d 1, 4 (1941), we said:

"... And where an appellant in a civil action asks that a verdict of a jury be set aside because of certain instructions alleged to be erroneous, he must establish affirmatively by the record presented to the appellate court that under the evidence in the case the jury might and probably would have returned a different verdict if the erroneous instructions had not been given." (Citations omitted).

*See also, Moe v. Kettwig,* 68 N.W.2d 853 (N.D.1955).

In Syllabus 2, *Perleberg v. General Tire and Rubber Company,* 221 N.W.2d 729 (N.D.1974), we said:

"In a case in which prejudicial error in an instruction is charged, this court will

consider the evidence before the jury, as well as the specific language used by the court, to determine whether the instruction complained of was in fact prejudicial."

*See also,* Syllabus 2, *Willert v. Nielsen,* 146 N.W.2d 26 (N.D.1966).

Wadeson points to the following as evidence that he was discharged in violation of the Age Discrimination in Employment Act: (1) He was 51 years old when he was discharged; (2) His position remained after his discharge and was filled by a younger man; (3) American Family literature characterizes the ideal recruit as being 31 years old; (4) American Family's "District Manager's Manual" says that "The kind of person we want ... is probably between 25 and 40, although there are successful American Family agents younger than 25 and older than 40"; (5) Lemons wrote a letter to Wadeson stating that he should "continue training and working with new agents and try to persuade some of the part-time agents into retiring. This would give you the opportunity to replace them with young full-time people."; (6) In another letter, Lemons commented favorably on the age of a recruit in his mid-30's; (7) When Wadeson wanted to appoint a 52-year-old man as an agent, Lemons wrote several letters stating that the man's age was a "red flag" and that he was "concerned about his age"; (8) American Family kept track of the average age of its employees; and (9) American Family saved money by discharging Wadeson at age 51.

■ In our view, none of the above items, individually or all of them together, raise any inference that his age had anything to do with Wadeson's discharge. Although a 38-year-old man was appointed to replace Wadeson in March of 1980, Ameri-

longer future service are directly related to an employee's age, it is a violation of the Age Discrimination in Employment Act to discharge the employee for those reasons."

**4.** Paragraph VI of Count One of Wadeson's second amended complaint alleged as follows:

"On September 12, 1979, Plaintiff was involuntarily discharged from the position of District Manager and, although such position was then and has subsequently been available, and

Plaintiff was and is fully qualified for it and had satisfactorily performed in that position for more than 17 years, Defendants, The American Family Insurance Group and Russell W. Lemons, wilfully, wrongfully, maliciously and without cause discharged Plaintiff solely because of his age, plaintiff being 51 years of age, thereby violating the provisions of Section 4(a)(1) of the ADEA (29 USC § 623(a)(1))."

can Family had earlier offered the position to another man, who turned it down. He was only three years younger than Wadeson. Any preference that American Family may have for new agent recruits between 25 and 40 years of age is tenuous evidence, at best, of a discriminatory intent in discharging a 51-year-old district manager. The fact that American Family may have preferred that a number of part-time agents retire and be replaced with "young full-time people" is not evidence of age discrimination. This only shows a preference for full-time agents, for "older employees are constantly moving out of the labor market, while younger ones move in." *Laugesen v. Anaconda Company,* 510 F.2d 307, 313 (Fn. 4) (6th Cir.1975). Wadeson, in fact, testified that he agreed with American Family's policy of urging the conversion of part-time agencies to full-time agencies and that it was a good policy that had been adopted by other insurance companies. Also, a preference, if any, that new agents be relatively young is not evidence of a preference that district managers also be relatively young. Obviously, there is a difference between a company age preference for new agents just starting insurance careers and age for purposes of appointment, continued service, retirement, or termination of persons in management positions. Lemons allowed the 52-year-old man, whose age Lemons had said was a "red flag", to be appointed as an agent. That American Family may have kept track of the average age of its employees is not evidence of a discriminatory purpose. Finally, American Family testified that it saved little or no money by terminating Wadeson and the jury was instructed on economic savings.

Wadeson testified that he was never warned that his job was in jeopardy. There was other testimony that Wadeson was so warned. Lemons testified that at a meeting on 8 March 1979 Wadeson told him that he wasn't going to be harassed. Wadeson also found it necessary to seek the assistance of a lawyer in preparing a written response to Lemons' letter of 12 March 1979 outlining Lemons' impressions of their discussion on 8 March 1979.

When Wadeson was discharged, there were four other district managers in North and South Dakota who were older than Wadeson and they were still with American Family at the time of trial. There was ample evidence justifying a conclusion that Wadeson was terminated because he was uncommunicative, uncooperative and insubordinate to his supervisors. Russell Lemons and Clayton Nelson testified that age was not a factor in the decision to terminate Wadeson. The fact that American Family offered to rehire him, in itself, militates against a conclusion that his age was a factor in Wadeson's termination.

It is clear from the evidence that a personality conflict existed between Wadeson and Lemons. It is also clear that Lemons effected a different management style—with greater involvement on his part—than had his predecessor. The evidence also shows that American Family was justified in discharging Wadeson for reasons other than age and American Family did not thereby violate the Age Discrimination In Employment Act. *See, Chamberlain v. Bissell Inc.,* 547 F.Supp. 1067 (D.Mich. 1982) which is factually similar to the instant case. The court in *Chamberlain, supra,* 547 F.Supp. at 1077, citing *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66 (6th Cir.1982), noted that "an employee may be fired because of a 'personality conflict' with his or her supervisor without violating the ADEA even though the employee is within the protected age group." *See also, Kerwood v. Mortgage Bankers Ass'n of America, Inc.,* 494 F.Supp. 1298, 1309 (D.D.C.1980), where it was held that an employee's discharge was due to his "inability to adjust and cooperate with a new manager's style and zeal", rather than his age.

In the face of a paucity of evidence that Wadeson was terminated because of his age and overwhelming evidence that he was terminated because he was uncommunicative, uncooperative and insubordinate, we see no useful purpose in reversing and remanding to allow the trial court to weave

a finer web of instructions upon a new trial on this issue.

We said in *Hermanson v. Morrell*, 252 N.W.2d 884, 893 (N.D.1977):

"We conclude that while the instruction objected to was erroneous, the error was harmless, for under the facts presented any verdict other than the one returned by the jury would have been unwarranted. *See, Cassidy v. Reuter*, 63 N.D. 267, 247 N.W. 890 (1933)."

■ Similarly, we conclude that while the instruction on age discrimination may have been somewhat lacking in detail, the error, if any, was harmless, "for under the facts presented any verdict other than the one returned by the jury would have been unwarranted."

For the reasons stated, the judgment is affirmed.

ERICKSTAD, C.J., and PEDERSON and VANDE WALLE, JJ., concur.

GIERKE, J., concurs in result.