Valeree J. BAKKEN, Plaintiff,

v.

The NORTH AMERICAN COAL
CORPORATION, Defendant.

Civ. No. A1–85–146.

United States District Court,
D. North Dakota,
Southwestern Division.

June 16, 1986.

Irvin B. Nodland, Bismarck, N.D., for plaintiff.

Robert J. Udland, Bismarck, N.D., for defendant.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

This is an action alleging sex discrimination in employment. Defendant moves to dismiss, or in the alternative for summary judgment. Plaintiff opposes that motion.

### FACTS

The relevant facts, taken in the light most favorable to Plaintiff as the non-moving party, are as follows. Plaintiff Valeree J. Bakken (Bakken) began working for Defendant The North American Coal Corporation (NACC), as a secretary in the Exploration Department in Bismarck, North Dakota, on February 1, 1977. Her beginning salary was $6,600 per year. She received salary increases over the next two years, and on October 16, 1979 she was promoted to a position of technical assistant in the department at a salary of $9,020 per year. Her job title was changed to research tech-

nician on January 1, 1980 and her salary was raised to $9,600 per year. Her annual salary was increased to $10,800 on March 1, 1980, $12,000 on April 1, 1981, $13,500 on April 1, 1982, and $14,000 on April 1, 1983. As a research technician, her responsibilities included research, drafting, maintaining a drill hole inventory and a map collection, representing NACC at meetings with federal agencies, and performing other support tasks for geologists in the department.

The complaint alleges several different forms of sex discrimination. Bakken alleges that her salary was less than that of one male employee in the department, Alan Moch (Moch). Though Moch worked in a different division of the department than Bakken and had a different job title, Bakken alleges their job duties were the same. Moch left the department in 1981. NACC explains Moch's higher salary as being related to his having received a college degree and to his working in a different division within the department than Bakken. Additionally, NACC alleges this portion of Bakken's claim is time barred.

NACC decided to move its Exploration Department from Bismarck to Cleveland, Ohio effective May 1, 1984. On January 3, 1984, Virgil Carmichael (Carmichael), head of the department, informed Bakken and two other department employees of the decision to move the department. Bakken alleges that Carmichael told the three employees that each would have the option of transferring to the Cleveland office, and that she told Carmichael she would move to Cleveland. She alleges Carmichael told the employees that those who chose not to transfer to Cleveland would be given first priority for job openings in other departments in the Western Division in Bismarck. NACC alleges that, of the three employees in the department, Bakken was the only one given the initial option of transferring to Cleveland.

At the time a transfer to Cleveland was first discussed, Bakken asked what raise in salary she might expect. NACC asserts that she stated she would need a raise in

order to transfer to Cleveland; Bakken asserts that she asked about a salary increase because her annual raise was due in April and because she wanted to know what financial position she might expect, should she transfer, in light of the higher cost of living in Cleveland. Bakken claims that two NACC supervisors, upon returning to Bismarck from a trip to Cleveland, reported to Bakken that NACC president Harry Washburn (Washburn) told them they were to discourage Bakken from transferring to Cleveland "at all costs." (Bakken affidavit, Doc. No. 23, at 4). Bakken was told that she would not be receiving a raise.

Bakken alleges that she was told soon after she began work for NACC that Washburn disliked women, and that women in her department were told to stay out of Washburn's way when he was in town. (*Id.* at 2). She claims that approximately six months after she began work, Carmichael told her he could approve a raise for her of only $25.00 rather than $50.00 per month as recommended by her immediate supervisor, because "Washburn wouldn't approve any more money than that because you're a woman." (*Id.*).

Bakken states that the other employees working in the Exploration Department in Bismarck were told on February 24, 1984 that they would have other positions available to them with NACC in Bismarck, but that she was told there would be no position available for her. Bakken asserts that she wanted to apply for a position as secretary in the Exploration Department in Cleveland, and that she told several people in the department that she wanted to stay with NACC and was willing to transfer to Cleveland without a raise and without reimbursement for her moving expenses. Another woman was hired as a secretary in the Exploration Department in Cleveland, at a salary higher than Bakken's. Bakken attempted to apply for other positions with NACC in Bismarck, but she alleges that Linda Carmen, of the NACC Personnel Department, discouraged or blocked those attempts. The other Exploration Department employees were transferred to other positions with NACC in Bismarck.

On April 10, 1984, Bakken filed a complaint with the North Dakota Department of Labor [1], alleging sex discrimination. On April 18, 1984, she met with two NACC supervisors to discuss her complaint. On that date, one of her supervisors told her that her position of research technician was being eliminated when the department was moved to Cleveland.

On April 19, 1984, Bakken was offered a position with another employer in Bismarck. She spoke with an NACC supervisor, who told her that if she did not agree to drop the complaint she had filed with the Department of Labor, she would not receive the severance pay that had been promised earlier. On April 27, 1984, NACC offered Bakken a position as a secretary/key punch operator in Bismarck; she did not accept that offer.

The Department of Labor concluded that NACC had not violated Title VII. The EEOC later found no probable cause for a finding of sex discrimination.

### DISCUSSION

The complaint alleges three causes of action: sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2 (1981); breach of an implied covenant and agreement of good faith and fair dealing; and bad faith so as to justify an award of punitive damages.

NACC raises several arguments in support of its motion. It alleges that Bakken cannot establish a *prima facie* case of discrimination under Title VII, that Bakken is not entitled to compensatory or punitive damages under Title VII, that Bakken's claim of unequal pay is time barred, that North Dakota does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts, and that this court should

---

1. That department, pursuant to a contract with the federal Equal Employment Opportunity Commission (EEOC), is responsible for initial processing of such complaints within the state.

decline to exercise pendent jurisdiction over Bakken's second cause of action.

*Title VII Claim*

■ This court will first address NACC's contention that Plaintiff cannot establish a *prima facie* case of discrimination under Title VII. NACC cites several cases which discuss elements of a *prima facie* case when the alleged discriminatory practice is a failure to hire. Bakken alleges several discriminatory practices involving salary, promotion, transfer opportunities, severance pay, harassment in the form of anti-female comments, and retaliation for filing a discrimination complaint. Bakken characterizes the case as one of discriminatory transfer and discharge, with the central question being NACC's motive for the discharge.

To ultimately prevail on her Title VII claim, Bakken must first present evidence that an employment decision was based on sex. NACC will then likely attempt to show that the decision was in fact made for a legitimate business reason. Bakken would then have the burden of showing that the proffered "legitimate business reason" was a pretext for sex discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Given the varied allegations and Bakken's supporting affidavits, this court cannot conclude that Bakken will be unable to establish a *prima facie* case of violation of Title VII. Genuine issues of material fact preclude summary judgment for NACC on the Title VII claim.

■ NACC contends that it is entitled to dismissal of Bakken's claim insofar as she seeks compensatory and punitive damages on the Title VII action. Bakken concedes that compensatory damages may not be recovered on a Title VII claim under Eighth Circuit law, and that recovery of punitive damages on a Title VII claim is a matter that is unsettled under Eighth Circuit law. In other cases, this court has followed the weight of authority in not allowing recovery of punitive damages in actions based solely on Title VII. *Tuttle v. Henry J. Kaiser Company*, Civil No.

A1–84–222 (D.N.D. Oct. 25, 1985) [Available on WESTLAW, DCTU database]; *Cottingham v. Mid Continent Theater Company*, Civil No. A1–85–54 (D.N.D. July 29, 1985) [Available on WESTLAW, DCTU database]. Insofar as Bakken seeks compensatory and punitive damages on her Title VII claim, this action will be dismissed.

■ NACC asserts that Bakken's claim that her salary was less than that of Alan Moch, a male employee in the department who performed the same or similar job duties, is time barred. Under section 2000e–5(e), a charge must be filed within 300 days of the occurrence of an unlawful employment practice. Moch left the Exploration Department in 1981. Bakken did not file her claim until 1984. Bakken's position is that the alleged equal pay violation is one incident in a continuing pattern of discriminatory treatment, and that the time for filing a charge thus runs from the time of the last discriminatory act. Bakken's position is supported by the Eighth Circuit's decision in *Satz v. ITT Financial Corp.*, 619 F.2d 738 (8th Cir.1980). *Satz* involved a claim of sex discrimination in the forms of unequal pay, denial of promotion or advancement, denial of training opportunities, and assignment of job duties. The plaintiff's claim included a charge that two men had been hired into desirable positions instead of her; both men had been hired several years before the plaintiff filed her discrimination charge. The Eighth Circuit reversed the district court's dismissal of the complaint, having determined that the district court had construed the complaint too narrowly and that the plaintiff had alleged unlawful employment practices continuing through a time within the timely filing period on the EEOC charge. While the facts involved in *Satz* are different from the facts alleged in this case, the following statement from *Satz* is relevant in this case, "The practice of paying discriminatorily unequal pay occurs not only when an employer sets pay levels, but as long as the discriminatory differential continues." *Id.* at 743. *See also Berry v. Board of Supervisors*, 715 F.2d 971, 980 (5th Cir.1983); *Bartelt v. Berlitz School of*

*Languages of America, Inc.*, 698 F.2d 1003, 1005 (9th Cir.1983); *Chang v. University of Rhode Island*, 606 F.Supp. 1161, 1241 (D.R.I.1985); *Derouin v. Louis Allis Division*, 618 F.Supp. 221 (E.D.Wis.1984). The timely filing requirement of Title VII is not a jurisdictional requirement and so is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Thus, this court will not dismiss Bakken's claim of unequal pay at this time, since she may be able to establish that it was one incident in a continuing pattern of discrimination and since she has raised a question of equitable tolling.

*State Law Claim*

■ NACC argues this court should not exercise pendent jurisdiction over the state law claim alleged in Bakken's second cause of action. NACC argues that the federal and state claims are factually and legally dissimilar, that there is potential for confusing a jury since Bakken would be entitled to a jury trial on the state claim but not on the federal claim, and that joinder of the claims would conflict with Congress' intent to restrict Title VII remedies to equitable relief. In considering this question, this court must first determine whether the state and federal claims arise from a "common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Even though allowable relief might be somewhat broader under Bakken's state law claim than under her federal claim, this court concludes that the claims arise from a "common nucleus of operative fact." Finding that constitutional minimum present, this court must then consider whether Title VII either expressly or impliedly negates the exercise of jurisdiction over the state law claim. *See Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Some

federal district courts, noting that Title VII claims are to be prioritized, have declined to exercise pendent jurisdiction over a state law claim joined with a Title VII claim. *See Hoferek v. University of Missouri*, 604 F.Supp. 938 (W.D.Mo.1985); *Benedict v. Sky Chefs*, 38 Fair Empl.Prac.Cas. (BNA) 1127 (D.Tenn.1985); *Mongeon v. Shellcraft Industries, Inc.*, 38 Fair Empl.Prac.Cas. (BNA) 1532 (D.Vt.1984); *Bennett v. Southern Marine Management Co.*, 531 F.Supp. 115 (M.D.Fla.1982). *Contra Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524 (11th Cir.1983); *Goodman v. Board of Trustees of Community College District 524*, 511 F.Supp. 602 (N.D.Ill.1981); *Montano v. Amstar Corp.*, 502 F.Supp. 295 (E.D.Pa.1980); *Luna v. City and County of Denver*, 537 F.Supp. 798 (D.Colo.1982). This court does not find considerations militating against joinder of state and federal claims to be present in this case. The discovery period ended several months ago, and neither party asserts that additional discovery is necessary. Additional time for trial of the state claim would be minimal. Joinder of the claims therefore would not appreciably delay consideration of the federal claim. This court is confident that both claims could be presented without unduly confusing the jury. Because of the factual similarity of the state and federal claims, refusing to exercise pendent jurisdiction would result in substantially duplicative proceedings in state and federal court. Considerations of judicial economy, convenience, and fairness to the litigants favor exercise of this court's pendent jurisdiction over the state law claim alleged in Bakken's second cause of action.

NACC seeks dismissal of Bakken's second cause of action on the ground that North Dakota has not recognized the existence of implied covenants of good faith and fair dealing in employment contracts. That contention requires that this court resolve an issue which is not well settled under North Dakota law.[2] Bakken concedes that

---

**2.** The facts alleged in this case are sufficiently different from those alleged in *Walker v. Modern Realty of Missouri, Inc.*, 675 F.2d 1002 (8th Cir.1982) to allow this court to consider the question presented. In that case, the court stated, "[I]f, as plaintiff urges, an implied obligation

North Dakota has not yet determined whether to permit actions for breach of an implied covenant of good faith and fair dealing in contracts for employment at will, and that North Dakota has not yet recognized a public policy exception to the employment at will rule. Bakken contends, however, that this court should exercise pendent jurisdiction and decide that the North Dakota Supreme Court would permit an action for breach of an implied covenant of good faith and fair dealing.

Under the traditional view, an employer is free to discharge an employee at any time, for any reason, or for no reason whatsoever. In a recent trend, the courts have developed a number of exceptions to that rule. Under those exceptions, an employer is no longer free to discharge an employee if the purpose and effect of the discharge is to frustrate the objectives of a clear public policy, or if the discharge is particularly abusive or malicious or in bad faith. Probably best recognized among those exceptions is the public policy exception, which is concerned, for example, with discharges of workers who file compensation claims after an injury or discharges of workers who report an employer's violation of law to a regulatory agency. *See, e.g., Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984). Another line of cases recognizes an action by an employee who was terminated because of an employer's desire to evade payment for an employee's past services. *E.g., Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977) (termination was in bad faith where employee was on brink of completing commissioned sale and employer had desire to pay as little as possible on the sale); *Maddaloni v. Western Massachusetts Bus Lines, Inc.,* 12 Mass.App. 236, 422 N.E.2d 1379 (1981), *aff'd in part,* 386 Mass. 877, 438 N.E.2d 351 (1982). A number of cases dealing with exceptions to the employment at will rule are based on an employer's representation, written or otherwise, that an employee will not be discharged until some internal grievance

procedure has been followed. There is no similar allegation made in this case.

Some of the actions based on exceptions to the employment at will rule have been characterized as tort actions, while others have been characterized as contract actions. Actions alleging a violation of a public policy are most likely to be considered tort actions, while actions alleging breach of a covenant of good faith and fair dealing are almost always recognized as contract actions. The distinction between a tort claim and a contract claim is, of course, important because of the differences in allowable relief. *See generally,* 3 A. Larson & L. Larson, Employment Discrimination § 118.33, at 26–26 (1984).

Bakken's second cause of action is clearly phrased in breach of contract terms, and this court will analyze it as such. Exceptions to the employment at will doctrine based on a contract theory may be considered in two categories—implied in fact and implied in law. The implied in fact exception recognizes a cause of action based on an employer's promise contained in an employee manual or handbook, or in some other employer representation. The promise sought to be enforced is usually an employer's promise that an employee will be dismissed only for 'just cause,' or only after a grievance procedure is followed. A potentially broader range of exceptions to the employment at will rule is encompassed by contract provisions which are implied in law, *e.g.,* those based on a general contractual requirement of good faith and fair dealing. The implied in law exception is an extension of the common law and Uniform Commercial Code rule that an implied covenant of good faith and fair dealing is a part of every commercial contract. *See generally,* Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv.L.Rev. 1816 (1980). While Bakken alleges that NACC acted in bad faith in respects other than termination, this court

---

of employers to act in good faith should be imposed by the law, the obligation must be

created by the law-making authority of Missouri, not by us." *Id.* at 1004.

is unaware of cases which deal with breach of an implied covenant of good faith and fair dealing in contexts other than termination.

Both parties cite two North Dakota cases which refer to the issue involved, but do not address it directly. In *Wadeson v. American Family Mutual Insurance Company*, 343 N.W.2d 367 (N.D.1984), a former employee brought claims of age discrimination and wrongful discharge against his former employer. The trial court gave a jury instruction which included the following language:

> North Dakota law recognizes an implied covenant of good faith and fair dealing in all contracts. In employment contracts, this means that neither party may do anything in bad faith that will injure the rights of the other to receive the benefits of the employment agreement.

*Id.* at 369. In a special verdict form, the jury was asked to determine whether the defendants failed to deal in good faith and fairly in their termination of the plaintiff. Since the jury found that the defendants "did not 'fail to deal in good faith and fairly,'" the appellate court did not determine whether the jury was properly instructed on questions of good faith and fair dealing. The appellate court did, however, address the plaintiff's theory that he could be discharged only for good cause because he had provided consideration independent of performing personal services. In the course of discussing that theory, the court stated:

> The instruction given on an implied covenant of good faith and fair dealing was as favorable to Wadeson as he was entitled to under the evidence.
>
> '... The good faith standard offers the flexibility necessary to deal with basic considerations such as length of service, past job performance, type or level of employment, and the economic condition or needs of the firm....
>
> 'A good faith standard does not force employers to retain workers who are clearly unsatisfactory; the goal should

be to limit the employer's discretionary power in order to prevent bad faith discharges, not to give employees permanent job security....' Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith*, 93 Harvard Law Review 1816, 1840 (1980).

*Id.* at 371. Bakken, unlike the plaintiff in *Wadeson*, does not assert that a standard of discharge only for good cause should apply.

In *Lee v. Walstad*, 368 N.W.2d 542 (N.D. 1985), a city chief of police brought an action alleging that his discharge was in violation of his due process rights and in violation of public policy. The court, in refusing to adopt a public policy exception to the rule of termination at will, stated:

> Lee has defined no clear public policy which his removal violates. Thus, were we inclined to adopt a public-policy exception to the terminable 'at will' rule in an appropriate case, we do not do so in this case. *See Wadeson v. American Family Mut. Ins. Co.*, 343 N.W.2d 367 (N.D.1984), in which we were urged to adopt an 'independent consideration' exception to the terminable 'at will' rule.

*Id.* at 547.

Also to be considered is the following state statute:

> An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title.

N.D.Cent.Code § 34–03–01 (1980).

In resolving the question of whether the North Dakota Supreme Court would recognize a cause of action for breach of the covenant of good faith and fair dealing implied in the at will employment relationship, this court will consider decisions of courts in other states. In *Dare v. Montana Petroleum Marketing Co.*, 687 P.2d 1015 (Mont.1984), the court reversed a grant of summary judgment for an employer on a claim of breach of the implied covenant of good faith and fair dealing. The court held that a handbook provision

promulgated by an employer is not essential to a cause of action for breach of an implied covenant of good faith and fair dealing. The court stated further that implication of the covenant depends on existence of objective manifestations by the employer which give rise to an employee's reasonable belief that he or she has job security and will be treated fairly. Montana had an "employment at will" statute similar to North Dakota's section 34–03–01. The court reconciled that statute with the implied covenant as follows:

> Whether a covenant of good faith and fair dealing is implied in a particular case depends upon objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly. The presence of such facts indicates that the term of employment has gone beyond the indefinite period contemplated in the at will employment statute, section 39–2–503, MCA, and is founded upon some more secure and objective basis. In such cases, the implied covenant protects the investment of the employee who in good faith accepts and maintains employment reasonably believing their job is secure so long as they perform their duties satisfactorily. Such an employee is protected from bad faith or unfair treatment by the employer to which the employee may be subject due to the inherent inequality of bargaining power present in many employment relationships. The implied covenant seeks to strike a balance between the interests of the employer in controlling the work force and the interests of the employee in job security.

*Id.* at 1020. (Citations omitted).

Given the language of *Wadeson* and *Lee* quoted above and given the trend of other jurisdictions in recognizing exceptions to the employment at will doctrine, this court will assume the North Dakota Supreme Court would recognize an action for breach of an implied covenant of good faith and fair dealing in an employment at will contract. That does not, however, end this inquiry. This court must also determine whether Bakken's allegations fall within the scope of that cause of action.

Because North Dakota has codified its employment at will rule, this court concludes that Bakken's cause of action must be based on NACC's representations, *i.e.,* that the implied covenant of good faith and fair dealing, if it exists, must be implied in fact rather than implied in law. To recognize an implied in law covenant of good faith and fair dealing in an employment at will contract would directly contravene the employment at will statute. Because it reconciles an exception to the employment at will rule with an "at will" statute very similar to the North Dakota statute, this court finds the Montana court's formulation of the issue to be helpful. This court will therefore consider whether NACC's objective manifestations were such as to give rise to a reasonable belief on the part of Bakken that she had job security and would be treated fairly. *Dare*, 687 P.2d at 1020. Length of employment and good performance may be considered, along with other factors, in determining the existence of an implied covenant of good faith and fair dealing. *See, e.g., Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 171 Cal. Rptr. 917. For purposes of this motion, this court must consider whether there remain genuine issues of material fact as to NACC's objective manifestations to Bakken that she had job security and would be treated fairly. Neither party has phrased the issue in those terms or attempted to develop the facts in those terms.

■ Bakken has made allegations of NACC's representations concerning her continued employment. She claims NACC represented to her that she could transfer to the Cleveland office when the Exploration Department moved, and that if she elected not to transfer she would be given priority for other job openings in the Bismarck office. NACC later decided to eliminate Bakken's position and Bakken makes no allegation that another person has been hired to fill her position in the Exploration Department in Cleveland. *See* Affidavit of Dennis Edwards at 3. This court is un-

aware of any cases raising a similar issue, *i.e.*, whether an action for breach of an implied covenant of good faith and fair dealing arises when an employee who was given some representation of continued employment was later terminated when his or her position was eliminated. The decision to eliminate Bakken's position was made shortly after she alleges NACC represented to her that she would have continued employment through transfer to Cleveland. For purposes of this motion, this court must conclude there is a genuine issue of material fact as to whether NACC eliminated Bakken's position in bad faith after representing to her that she would have continued employment.

The parties have only briefly addressed the effect of NACC's offer to Bakken of a position as a secretary/key punch operator in another department in NACC's Bismarck office. That offer, for a different position but at the same salary, would seem to negate Bakken's claim of breach of the implied covenant insofar as it concerns breach of a promise that she would be given priority consideration for other positions that became available in NACC's Bismarck office.

■ Bakken alleges that her termination violated a public policy, embodied in both state and federal statutes, against discrimination. Most courts that have considered the question have held that the presence of a statutory remedy for violation of an anti-discrimination statute precludes a common law action based on violation of a public policy against discrimination. *See generally*, 3 A. Larson & L. Larson, Employment Discrimination § 121.20, at 26–86 (1984). Those courts have generally held that the remedy scheme provided in an anti-discrimination statute is intended to define the exclusive remedy against discrimination. Other considerations include use of a public policy exception to circumvent an anti-discrimination statute's procedural and remedial limitations. Proceeding under a theory of violation of a public policy, Bakken might be entitled to recover traditional tort damages rather than solely contract dam-

ages, since an action based on a public policy exception is usually regarded as a tort action. This court will follow the current weight of authority on this question and so concludes Bakken's second cause of action cannot rest solely on an alleged violation of a public policy against discrimination. *See, e.g., Zywicki v. Moxness Products*, 31 Fair Empl.Prac.Cas. (BNA) 1348 (E.D.Wis.1983); *Howard v. State Farm Ins. Co.*, 61 Ohio App.2d 198, 401 N.E.2d 462 (1978) (remedies and procedures of race discrimination statute held to be exclusive); *Teale v. Sears, Roebuck & Co.*, 66 Ill.2d 1, 3 Ill.Dec. 834, 359 N.E.2d 473 (1976) (no cause of action can be implied from a state age discrimination statute). *But cf. Calloway v. Gimbel Brothers*, 19 Fair Empl. Prac.Cas. (BNA) 705 (E.D.Pa.1979); *Cancellier v. Federated Department Stores*, 672 F.2d 1312 (9th Cir.), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982).

■ Since Bakken's second cause of action sounds in contract, this court concludes she is not entitled to punitive damages on that claim. *Brockmeyer v. Dun & Bradstreet*, 335 N.W.2d 834, 841 (Wisc. 1983). The complaint alleges a separate cause of action for punitive damages; on that cause of action, summary judgment will be entered for NACC.

*Motion to Strike*

NACC moves to strike the following paragraph of the complaint:

> As a result of plaintiff filing her discrimination complaint, other employees of the defendant have had psychological pressure brought to bear upon them to cause them not to assist plaintiff in the pursuit of her rights. Such conduct on the part of the defendant is retaliatory in nature, is made in bad faith, and is contrary to law.

(Complaint, ¶ 4(8) ). NACC admits that it has directed its employees not to talk with Bakken or her attorney about the facts of this case unless counsel for NACC is present. NACC asserts that this paragraph makes no claim upon which relief

may be granted, is brought to embarrass and prejudice NACC before the jury, is immaterial, is impertinent, and is frivolous. Bakken alleges that NACC told its employees to have no contact with her of any kind. Bakken states that she cannot afford formal discovery, and that NACC has acted to effectively foreclose avenues of informal discovery.

■ Under Fed.R.Civ.P. 12(f), a motion to strike a matter from a pleading may be made before responding to that pleading. NACC's motion is obviously untimely under that standard. However, Rule 12(f) also provides that matter may be stricken on the court's own motion at any time, and that language has been interpreted to allow consideration of otherwise untimely motions to strike. *Lunsford v. United States,* 570 F.2d 221 (8th Cir.1977). This court will therefore consider NACC's motion to strike.

■ Rule 12(f) provides for striking matter that is redundant, immaterial, impertinent, or scandalous. Matters outside the pleadings are ordinarily not considered on a motion to strike. *See, e.g., Krauss v. Keibler-Thompson Corp.,* 72 F.R.D. 615 (D.Del.1976). The parties dispute the facts behind the paragraph at issue in this motion. Because of that dispute, this court cannot conclude that the paragraph at issue contains redundant, immaterial, impertinent, or scandalous material. NACC's motion to strike will therefore be denied.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED:

1). Defendant is granted summary judgment of dismissal on Plaintiff's third cause of action.

2). Defendant is granted summary judgment of dismissal on Plaintiff's first cause of action insofar as she seeks compensatory damages on that claim.

3). Defendant's motion for summary judgment is, in all other respects, denied.

4). Defendant's motion to strike is denied.