HARVEY P. HOLDEN v. JAMES T. BLOXUM.

1. PARTNERSHIP: PARTNER MAY SIGN INDIVIDUAL NAMES OF MEMBERS IN THE PARTNERSHIP BUSINESS.—It is no objection to the validity of a note, made by a partner in the course of the partnership business, and for the benefit of the firm, that he signed the individual names of the members of the firm to it, instead of the partnership name.

2. NEW TRIAL: CONFLICTING EVIDENCE: CREDIBILITY OF WITNESSES.—A new trial will not be granted, when the evidence is conflicting, and the propriety of the verdict depends upon the credibility of the witnesses examined.

3. SAME: IRRELEVANT INSTRUCTION.—A new trial will not be granted, because an irrelevant instruction was given to the jury, if it appear that they were freely instructed upon the points involved in the issue, and that they could not have been misled by the charge complained of.

ERROR to the Circuit Court of Rankin county. Hon. John Watts, judge.

W. P. Harris and T. P. Ware, for plaintiff in error,
Cited Story on Partn. 153-4-5.

W. C. Harper, contra,
Cited Craig v. City of Vicksburg, 31 Miss. 216; Stokes v. Winslow, Ib. 518.

HANDY, J., delivered the opinion of the court.

This action was brought upon a promissory note, alleged to have been made by H. P. Holden and James Ware, and so signed by them, to A. J. Barker, or bearer, by whom it was transferred by delivery, to the plaintiff below. The suit was dismissed as to Ware, and Holden pleaded non est factum.

It appears, by the evidence set forth in the record, that Holden and Ware were partners in keeping a livery stable, and in trading in horses and mules, at the time of the date of the note.

Runnels, a witness for the plaintiff, testified that Ware and Barker came to his store, and talked about a mule trade, and fixed upon the amount of the note, and at their request that he drew the note for

them; that he did not understand what was said between them about how the note was to be signed, or know who erased the name at the foot of the note; that they had previously inquired of him whether he would take Holden for a small amount due his house by Barker, which he declined.

Wadford testified, that he saw a mule at Holden & Ware's livery stable, which Ware told him they had got from Barker, and proposed to sell to witness; that when witness was a partner of Holden, in the same business, they dealt in horses and mules, and each of them was in the habit of signing the name of the firm.

Wiell testified, that Barker and Ware went to him some time previous, to know if he would take Holden & Ware for a debt of $15, due him by Barker; which he agreed to, and did so, charging the amount to Holden & Ware, but he did not know whether it had been paid or not, as he had traded the claim.

Barker, the payee,—having been released from liability by the plaintiff,—testified that, on the date of the note, he went to the livery stable of Ware & Holden to sell them a mule, and saw Holden there, and offered to sell the mule to him at $125; that Holden said, if there was no money to pay, they might trade. Witness told him where he had some accounts, and Holden said, "May be we can take them up," and took his pencil and figured up the amount, and Ware and witness then went to see the witness Wiell, who gave up Barker his note for $15, and charged that amount to Ware & Holden, but failed to make the same arrangement for the amount due Richardson & Co., whom Barker owed $25 or $30; that witness did not owe as much as $125 in the town; that they then went to see Holden about it, but he had gone, and Ware said he would make the trade, and they then went in at Richardson's, and Ware made the note for $110,—$15 having been assumed by Wiell, and signed his name to it; witness told him that Holden was the most responsible man, and he would like to have his name first, and Ware signed it.

It appears, by inspection of the note, that it was first signed by the name of James Ware; that name appears to have been erased, and the name of "*Holden & Ware*" signed to it, and that signature appears to be altered by erasing the name of Ware from it, and prefixing to the name Holden the letters H. P., so that that

signature, as altered, reads *H. P. Holden*, and under that appears the name of *James Ware*, so that the note, as it now appears, is signed *H. P. Holden* and *James Ware*.

Benjamin Ware, a witness for the defendant, testified that he was attending the stable, and keeping the books for Ware & Holden, and recollected the day Ware bought the mule from Barker ; that Holden lived six or seven miles in the country, and was not in town the day Ware traded with Barker ; that the mule was kept in the stable, and witness did not know that any charge was made against Ware for the keeping ; but he also had a horse of his individual property, which was kept there without charge ; that he did not know on whose account the mule was bought, or whether it was treated as joint or individual property.   On cross-examination, he stated that Holden was not in town that day, that he saw, as he usually came to the stable ; he thinks he would have seen him if he had been in town.

Evans testified, that he called at the stable while the mule was there ; that Ware told him the mule was his own property, and offered to sell him for $125 ; that he then went to see Holden, hoping to get the mule cheaper ; but that Holden told him he had nothing to do with it, that it was Ware's own property ; and he then went to Ware, and bought and paid him in money $120 for it.

The most important question involved in the case is, whether the mule was sold by Barker to Ware on account of the firm of Ware & Holden, or was intended by Ware and Barker to be so sold. For if the purchase was understood and intended to be so made, it being in the course of the business in which the firm was engaged, Barker was justified in dealing with Ware for the firm, and Ware was authorized to execute the note of the firm.   And if it be taken as proved, that the purchase was for the firm, it would constitute no just defence to the note, that the partner executing the note signed the individual names of the partners, and not the firm name.

The evidence upon this question is such as to leave the matter in much doubt, and to depend, in a great measure, upon the weight which might be given to the testimony of the witness Barker on the one side, and of Ware on the other.   It was the especial province of the jury to determine to which of these witnesses they would give the greater weight and credit ; and their decision of a

doubtful question of fact, under such circumstances, cannot be disturbed.

It appears that they came to the conclusion, from the evidence, that the mule was purchased on account of the firm; and, as the evidence is susceptible of that view, we cannot say, in such a case, that their verdict is not sustained by the evidence.

But it is insisted that the jury were misled, in finding this verdict, by the fifth instruction given in behalf of the plaintiff, which is, "that if the jury believe, from the evidence, that Bloxum, the plaintiff, became the *bonâ fide* holder of the note sued on, for a valuable consideration, ignorant of any defence that existed against the consideration, they must find for the plaintiff, as the note is payable to bearer, unless they believe that the name of Holden was a forgery."

It is not perceived how this instruction could have misled the jury, under the evidence. The point of it is, that *the failure of consideration*, as between the makers of the note and Barker, was no defence against the plaintiff, if he was a *bonâ fide* holder, unless Holden's name was a forgery. There was no question of failure of consideration presented in the case, no evidence as to the consideration which the plaintiff gave for the note. But the issue was simply whether, under the circumstances in which the mule was purchased, and the note signed, Ware was justified in signing the name of Holden to it, and he was bound thereby; and that is distinctly stated in the first instruction to be the issue. The instruction, therefore, may be objectionable, on the ground of irrelevancy, but it could not have misled the jury.

The first instruction is so explicit, as to prevent any prejudice to the defendant from this instruction. It is as follows:—

"The issue for the jury to try is, whether the defendant signed the note, and whether any person had authority to sign it, if he did not sign it himself; and if the jury believe, from the evidence, that Ware signed the name of Holden and himself to the note, during the existence of their partnership, and for consideration of such property as they were generally known to deal in, Holden is liable, unless the jury should believe, from the evidence, that Barker was notified that Ware had no such authority to make a contract binding upon Holden; or that, if he had such authority, the pro-

perty purchased was not for the use of the firm, but for Ware individually."

Judgment affirmed.