MYRA FOUNDATION, a domestic corporation, Plaintiff and Appellant,

v.

L. A. HARVEY, d/b/a L. A. Harvey and Associates, Defendant and Respondent.

No. 7779.

Supreme Court of North Dakota.

Dec. 30, 1959.

Rehearing Denied Jan. 21, 1960.

Day, Stokes, Vaaler & Gillig, Grand Forks, for appellant.

Shaft, Benson & Shaft, Grand Forks, for respondent.

BURKE, Judge.

On reassignment. Plaintiff brought this action to recover the possession of certain books of account and records which it alleged were being wrongfully detained by the defendant. The defendant answered, asserting that he had legal possession of the books and records by virtue of a lien for fees for services performed for the plaintiff in connection with such books and records and counterclaimed for the reasonable value of such services. The plaintiff in his reply denied any indebtedness for services and alleged damages for the detention of the books and records. Upon the trial of the case the defendant obtained a verdict and judgment upon his counterclaim. Plaintiff thereafter moved for judgment notwithstanding the verdict or a new trial. This motion was denied and plaintiff has appealed both from the order of denial and from the judgment.

There are many specifications of error but plaintiff in its brief states that all issues raised by the specifications may be resolved under three separate headings. They are:

1. Is the verdict of the jury contrary to the evidence and against the law?

2. Did defendant have a lien on plaintiff's books and records?

3. Did the court err in changing the order of trial?

■ Upon the issue of the sufficiency of the evidence plaintiff asserts that the evidence establishes that auditing and accounting services were performed by the defendant for the plaintiff in accordance with the terms of an express contract which provided that defendant's compensation for such services should be $100 a month. Plaintiff agrees that some amount is owing to the defendant but states that it must be computed according to the provisions of the express contract. Defendant agrees that originally his arrangement with the plaintiff was defined by an express contract but states that this arrangement was terminated

and that the services for which he sought compensation in this action were performed without any express agreement as to fees and that he is therefore entitled to recover the reasonable value of his services under an implied contract. Since the trial judge submitted the issue of whether defendant's services were performed under an express or implied contract to the jury and the jury by its verdict determined that the express contract had been terminated and had been succeeded by an implied contract, the real question here is whether the evidence was sufficient to make that issue a question of fact for the jury.

The first contract between the defendant and the plaintiff had its origin in a proposal made by the defendant in a letter to Carroll Day, then president of the defendant, dated December 1, 1952. This proposal was as follows:

"As we understand it, no bookkeeping has been done for the Myra Foundation since January 1, 1952. We would like very much to start in on this and bring it up to date, and we would be willing to take the job on for $100.00 a month. This would include writing up and posting the books, furnishing the regular financial report, and preparation of Federal and State income tax returns."

■ There was no written acceptance of this proposal but it was either accepted, orally or impliedly, because the books of the plaintiff were turned over to the defendant, and the work was done and paid for at the rate of $1,200 a year for the years 1951, 1952 and 1953. It will be noted that the contract, neither expressly nor impliedly, fixes any time for its duration. Either party might therefore terminate the contract upon giving reasonable notice to the other. 17 C.J.S. Contracts § 398, p. 887; 12 Am.Jur. (Contracts, Sec. 305) 860.

While there is no testimony to that effect, the bill, presented by the defendant to the plaintiff on December 1, 1955, suggests that,

at sometime prior to the presentment of the bill, there may have been an agreement to modify the contract. This bill sets forth charges as follows: for accounting services for 1954, $1,200; for preparation of income tax returns for the years 1950, 1951, 1952, 1953 and 1954, $250; and for expert advice $550. Prior to the rendition of this bill the annual charge had been $1,200. According to the proposal contained in the letter of December 1, 1952, this charge was to include compensation for preparing income tax returns. If the contract had not been modified the item of $250 for preparing income tax returns was improper. The bill however was paid and, in so far as the record shows, without protest.

■ The defendant testified that, attached to the bill of December 1, 1955, was a typewritten note which read:

"Carroll

"It will be positively necessary to substanially raise the cost of our service to the Foundation for the year 1955 and subsequent years due to the constant increase in the cost of doing business.

"Len"

The Carroll to whom this note was addressed was identified as Carroll Day, who was then president of the plaintiff corporation, and the Len who signed the note was identified as the defendant L. A. Harvey. Although some attempt was made to discredit the evidence of the defendant in this regard by testimony that neither the bill nor the note could be found in the files of the plaintiff, the evidence of the defendant as to mailing was explicit, it was supported by his office mailing log and the bill was paid by the plaintiff. The presumption is that a letter duly directed and mailed was received in the regular course of business. Sec. 31–1103 NDRC 1943. If the note was received by plaintiff there can be no question that it operated to terminate the prior contract for compensation for auditing services. It explicitly gave notice that the old contract would not be continued. The

question of whether plaintiff received the note was submitted to the jury upon evidence which clearly warranted an inference that it had been received.

In February 1956, the plaintiff turned over to the defendant all of its receipt books, check stubs, invoices and vouchers for the purpose of posting all of the books of the corporation and preparing an audit for the year 1955. It is conceded by all parties that there was no new express agreement for compensation for these services.

■ In March 1956, Mr. Day died and Mr. A. W. Stokes succeeded to the presidency of the plaintiff corporation. Thereafter Mr. Harvey, the defendant, suggested that the audit and accounting should be carried forward to a date subsequent to Mr. Day's death. After some objection, Mr. Stokes, on May 29, 1956, wrote Mr. Harvey a letter in which he stated:

"I have come to the conclusion that you are correct, that for your protection as well as mine it would be advisable to have the audit brought up to date, and I suggest that you bring it up to date as of April 30 or May 31, which ever you choose."

Upon this authorization, the defendant continued the posting, auditing and accounting and all balances were brought forward to June 1, 1956. The work was completed on October 8, 1956, and on that date defendant notified Mr. Stokes that the work was completed and that upon payment of his bill for services, the audit reports and all of the records would be delivered to him. It is agreed that there was no express contract with Mr. Stokes for compensation for this work. One who performs work or services for another at his request is ordinarily entitled to recover the reasonable value of his services. Farmer v. Holmes, 35 N.D. 344, 160 N.W. 143. Upon the evidence the jury was clearly warranted in finding that the first contract between the parties had been terminated and that it had been succeeded by an implied promise to pay de-

fendant the reasonable value of his services. It follows that the motion for judgment notwithstanding the verdict was properly denied.

During the course of the trial the court decided that the defendant had a possessory lien for compensation upon the books and records of the plaintiff and instructed the jury that plaintiff's claim for $600·damages for the detention of the records should not be considered by them. This ruling and instruction are specified as error.

The defendant claimed a lien under the provisions of Sec. 35–2011 NDRC 1943. This section provides:

"Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof by labor or skill employed for the protection, improvement, safekeeping, or carriage thereof has a special lien thereon, dependent upon possession, for the compensation, if any, which is due to him from the owner for such service."

In opposition plaintiff asserts that accountants are not included among the persons granted liens by this statute and cites Scott Shoe Machinery Co. v. Broaker, 35 Miss. 382, 71 N.Y.S. 1023, 10 N.Y.Ann.Cas. 130; and George v. Walton, Ohio App., 43 N.E.2d 515, in support of its position. In Scott Machinery v. Broaker, supra, 71 N.Y.S. at page 1023, it was said:

"At common law, liens were given to attorneys, warehousemen, wharfingers, and to other special classes of persons. There was no such thing as an accountant's lien. And, except in the case of these favored classes, the only persons having a lien at common law are bailees employed to change, alter, repair, or do work upon some article, and who by their· services have added something to its value."

▮ The cited cases support plaintiff's contention that accountants do not have a lien upon clients records in their possession merely because they are accountants. In the ordinary case where the client furnishes the accountant with a completed set of books and the accountant prepares an audit report or income tax statement upon the basis of the information contained in the client's books, we think it clear that the accountant would have no lien for compensation upon the client's records. However, the fact that an accountant had no lien at common law would not prevent him from acquiring a lien under the provisions of Sec. 35–2011, supra, if the facts under which he claims the lien fulfill the conditions of the statute.

▮ In this case the plaintiff kept no books at all. Sometime after the close of each calendar year plaintiff would deliver to the defendant all of its books, its duplicate receipts, check stubs, bank statements, vouchers and invoices and defendant's first accounting task each year would be to bring the books up to date by making the entries in the several books of account, necessary to show the business transactions of the plaintiff for the preceding year and its financial condition. These books included cash receipts journal, disbursements journal, general journal, the general ledger, the accounts payable ledger and the accounts receivable ledger. These facts meet the conditions necessary to acquire a lien under the statute. The books were articles of personal property lawfully in the possession of the defendant and the defendant rendered service to the owner of the books by labor and skill employed for their improvement. Improvement is defined by Webster's New International Dictionary 2nd ed. "State of being improved, esp. enhanced in value or excellence." The argument that bringing the books up to date did not enhance their value is, in our view, a captious and frivolous argument. It was not error for the trial court to hold that defendant had a lien upon such of the plaintiff's books as he had improved, for compensation for this work. This lien, however, would not extend to the source

material such as receipt books, bank statements, check stubs etc., upon which defendant had done no work. Since these were among the items which plaintiff alleged were wrongfully detained by the defendant and for the detention of which he claimed damages, it was error for the trial court to sustain all objections to the proof of such damages and to instruct the jury that they should not consider plaintiff's claim of damages.

■ The last issue raised by the plaintiff concerns the change made in the order of trial. When the case was called for trial the defendant moved that he be given the right to open and close the case upon the ground that the only substantial issues in the case arose upon his counterclaim for compensation. This motion was granted and plaintiff has specified that the granting of the motion was error.

Section 28-1410 NDRC 1943 provides: that the plaintiff shall have the right to open and close " * * * unless the judge for special reasons directs otherwise."

In his complaint the plaintiff alleged that certain of its records were being illegally detained by the defendant and asked only for possession of the records. In his answer the defendant admitted possession of the plaintiff's records, and alleged that it had a lien upon the records for compensation for services. The defendant also counterclaimed for the reasonable value of services performed for the plaintiff. The plaintiff replied denying that it was indebted to defendant as alleged in the counterclaim and alleging "by way of set off" that plaintiff had been damaged by the acts of the defendant, in failing to prepare income tax returns as agreed and in retaining the books, in the amount of $600. Under these pleadings the defendant became in effect the plaintiff. Defendant had the burden of establishing his right to retain plaintiff's books and his right to compensation and plaintiff did not ask for any damages except by way of set off to defendant's claim. If no evidence were taken in the case at all plaintiff would have been entitled to the relief demanded in his complaint upon the basis of the admissions in the answer.

These are circumstances which in our opinion constitute "special reasons" which under the provisions of Sec. 28-1410 NDRC 1943, would authorize the trial judge to change the order of trial. J. I. Case Co. v. Hrubesky, 125 Neb. 588, 251 N.W. 169; Cowen v. T. J. Stewart Lumber Co., 177 Okl. 266, 58 P.2d 573. The order in this regard was therefore not erroneous.

■ We have found that the trial court erred in refusing to permit the plaintiff to offer proof of the damages alleged in his reply. The total amount of the damages alleged was $600. Plaintiff could not have been prejudiced by the error to a greater extent than the total damages alleged. A new trial will therefore be granted unless the defendant will consent to a reduction of $600 in the amount of his judgment. The case is remanded to the district court for further proceedings in accordance with this opinion.

SATHRE, C. J., and MORRIS, J., concur.