**Kenneth O. MOEN, Plaintiff and Appellee,**

v.

**Bruce W. MEIDINGER and Sherry L. Meidinger, Defendants and Appellants.**

**Civil No. 950315.**

Supreme Court of North Dakota.

May 14, 1996.

Janet Holter Zander, Zander Law Office, P.C., Williston, for plaintiff and appellee.

Sean O. Smith, Tschider & Smith, Bismarck, for defendants and appellants.

MESCHKE, Justice.

Bruce W. Meidinger and Sherry L. Meidinger appealed from a corrected summary judgment awarding Kenneth O. Moen $15,-000, plus interest, costs, and disbursements, in Moen's lawsuit to enforce the Meidingers' alleged guaranty of a debt owed by their corporation, Dakota Farm & Home, Inc. (Dakota). We reverse and remand.

On March 28, 1984, with a $240,000 loan from First National Bank of Bowman, underwritten by the United States Small Business Administration (SBA), to Dakota, Meidingers purchased the assets of Econo Farm & Home Centers, Inc., in Bowman, North Dakota, and transferred them to Dakota. Meidingers individually guarantied the SBA loan. Bruce Meidinger, as President, and Sherry Meidinger, as Secretary of Dakota, executed a promissory note by Dakota to Moen, a shareholder of Econo Farm & Home Centers, Inc., for $15,000. Dakota and Moen executed a standby agreement on an SBA form whereby Moen agreed not to collect or enforce the $15,000 note without the prior written consent of First National Bank of Bowman.

In April 1986, Dakota also received a disaster loan from the SBA for $84,500. Meidingers executed an additional guaranty on an SBA form whereby each guarantied payment of this debt to the SBA. Dakota and Moen again executed a standby agreement on an SBA form whereby Moen agreed not to enforce or collect on the 1984 note for $15,000 without the prior written consent of the SBA. Paragraph 1 of the 1986 standby agreement said:

1. There is owing by Borrower to Standby Creditor the amount of *Fifteen thousand and no/100* Dollars (*$15,000.00* ) with-

out interest* with interest at the rate of *10* per cent per annum from *March 28, 1984* * (which amount and all interest, if any, now and hereafter owing thereon, are in this Agreement collectively called "Claim"). The Claim is not evidenced by any promissory note, bond or other written obligation of any kind whatever except, *Promissory Note.* A true and correct copy of each such note, bond or other written obligation (if any), is annexed hereto and made a part hereof. The name of each endorser, guarantor and surety (if any), liable upon the Claim, or any part thereof, is as follows:

As shown, the words "without interest" and the entire last sentence in the printed form were lined out. Meidingers signed at the end of the standby agreement as President and Secretary of Dakota, and additionally signed below the signatures of the parties to the agreement in this manner:

Guarantors, Endorsers, Sureties

/s/ Bruce W. Meidinger
Bruce W. Meidinger, Individually

/s/ Sherry L. Meidinger
Sherry L. Meidinger, Individually

The dispute in this case centers on the effect of the latter signatures.

The business operated by Dakota failed, and Dakota became a defunct corporation. In 1994, Moen sued Meidingers for payment of his 1984 promissory note for $15,000, asserting Meidingers had individually guarantied this debt owed by Dakota. Both sides moved for summary judgment. In his affidavit for summary judgment, Moen stated: "Bruce W. Meidinger and Sherry L. Meidinger, individually, guaranteed the debt owed to the Plaintiff by [Dakota] (Exhibits 1 and 2 herein) pursuant to the terms of the standby agreement." In their affidavits for summary judgment, Meidingers each stated: "That the only personal guarantee given by your affiant was to the U.S. Small Business Administration, in consideration for two loans in the amount of $240,000, and $84,500."

The trial court granted Moen's motion for summary judgment and denied Meidingers'

motion, ruling that Meidingers individually guarantied the debt of Dakota to Moen by signing the standby agreement as "Guarantors." After a corrected summary judgment was entered for the right amount with interest, Meidingers appealed.

The rules of civil procedure permit summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." NDRCivP 56(c). From our review, we conclude that the standby agreement is ambiguous on whether Meidingers individually guarantied the debt of Dakota to Moen, and that a genuine issue of material fact about the parties' intent precludes summary judgment in this case.

The trial court concluded, without explanation, that "Meidingers did sign a personal guarantee in return for Moen's agreement to delay seeking payments due," and that "Meidingers, individually, guaranteed the debt under the terms of the standby agreement." We encourage trial courts to fully explain the rationales for their decisions to aid public understanding and to facilitate appellate review. *Muller v. Custom Distributors, Inc.,* 487 N.W.2d 1, 2 (N.D.1992). While a better explanation of the trial court's reasons here might have made our review easier, we conclude that the court believed Meidingers' signatures under the words "Guarantors, Endorsers, Sureties" was, as a matter of law, their guaranty of Dakota's debt to Moen.

▪▪▪ The construction of a written contract to determine its legal effect is a question of law for the court to decide and, on appeal, we independently examine and construe the contract to determine if the trial court erred in its contract interpretation. *General Elec. Credit Corp. v. Larson,* 387 N.W.2d 734, 736 (N.D.1986). A court's primary goal in interpreting a contract is to ascertain the mutual intentions of the contracting parties. *National Bank of Harvey v. International Harvester Co.,* 421 N.W.2d 799, 802 (N.D.1988). "Section 9–07–06, N.D.C.C., requires that a contract be inter-

preted as a whole." *Id.* at 802. Under NDCC 9–07–12, "[a] contract may be explained by reference to the circumstances under which it was made." *Id.* at 803. "If the language of the contract is clear and unambiguous, and the intent is apparent from its face, there is no room for further interpretation." *Habeck v. MacDonald,* 520 N.W.2d 808, 811 (N.D.1994). Still, as *Continental Cas. Co. v. Kinsey,* 499 N.W.2d 574, 577 (N.D.1993), discussed, a contract is ambiguous when reasonable arguments can be made for different positions on its meaning.

 Whether or not a contract is ambiguous is a question of law. *Habeck* at 811. "A determination of ambiguity is but the starting point in the search for the parties' ambiguously expressed intentions," since an ambiguity creates "questions of fact to be determined with the aid of extrinsic evidence." *Bohn v. Johnson,* 371 N.W.2d 781, 788 (N.D.1985). When the terms of a contract are ambiguous, "extrinsic evidence of the parties' intent may be considered and the terms of the contract and the parties' intent become questions of fact." *Wachter Development, L.L.C. v. Gomke,* 544 N.W.2d 127, 131 (N.D.1996). As *National Bank of Harvey,* 421 N.W.2d at 803, explained, the resolution of an ambiguity with extrinsic evidence requires the trier of fact to make a finding of fact.

 Meidingers argue: "Paragraph 1 of the Standby Agreement provides clear, definitive and unambiguous evidence that no personal guaranty existed on the part of the Meidingers for the Dakota Farm debt." This is a reasonable argument because the space in Paragraph 1 for listing the names of each guarantor of the promissory note from Dakota to Moen was left blank and, additionally, the whole last sentence of that paragraph in the form, designed for naming each guarantor, "(if any)," was lined out. Additionally, Meidingers insist that it is more reasonable to infer that their signatures were "required by the SBA to evidence the consent of the Meidingers in their capacity as guarantors of the SBA indebtedness ..., and not as guarantors of the Dakota Farm debt to Moen."

Moen counters: "In light of the undisputed facts and circumstances, the caption 'Guarantors, Endorsers, Sureties' above Meidingers signatures, together with the fact that below each signature line the Meidingers names are specifically typed with the indication that they are signing in their individual capacities, are sufficient to clearly infer a guarantee." This too is a reasonable argument.

Reasonable arguments are thus made for different positions on the intent of Meidingers' individual signatures on the standby agreement. Therefore, the standby agreement is ambiguous on whether or not Meidingers individually guarantied the debt of Dakota to Moen. This leaves a question of fact to be determined with extrinsic evidence at a trial. *Bohn v. Johnson,* 371 N.W.2d at 788. This genuine issue of material fact makes summary judgment inappropriate.

Because we conclude that the standby agreement is ambiguous, we need not reach other arguments made by the parties. We reverse the summary judgment and remand for trial.

VANDE WALLE, C.J., DONOVAN FOUGHTY, District Judge, and NEUMANN, J., concur.

BERYL J. LEVINE, Surrogate Judge, concurs in the result.

DONOVAN FOUGHTY, District Judge, sitting in place of SANDSTROM, J., disqualified.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.