# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1947

_____

Brian Olander,                              *
                                            *
    Plaintiff - Appellant,              *
                                            *    Appeal from the United States
v.                                          *    District Court for the
                                            *    District of North Dakota.
State Farm Mutual Automobile                *
Insurance Company, et al.,                  *
                                            *
    Defendants - Appellees.             *

_____

Submitted:  September 11, 2002

Filed: January 21, 2003

_____

Before HANSEN, Chief Judge, LAY, HEANEY, McMILLIAN, BOWMAN, WOLLMAN, LOKEN, MORRIS SHEPPARD ARNOLD, MURPHY, RILEY, MELLOY, and SMITH, Circuit Judges, en banc.

_____

LOKEN, Circuit Judge.

Brian Olander became a State Farm insurance agent in Mandan, North Dakota in 1981. In August 1996, Olander was charged with murder after a violent altercation with a neighboring landowner. When Olander refused to take a leave of absence until the criminal charges were resolved, State Farm terminated his agency agreement and assigned other agents to serve the State Farm policyholders previously served by Olander's agency. In 1999, Olander commenced this diversity action against State

Farm, alleging wrongful termination of the agency agreement and related claims. The district court[1] granted State Farm's motion for summary judgment, concluding that Section III.A. of the written State Farm Agent's Agreement unambiguously made the parties' contractual relationship terminable at will. Section III.A. provides:

> This Agreement will terminate upon your death. You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address. The date of termination shall be the date specified in the notice, but in the event no date is specified, the date of termination shall be the date of delivery if the notice is delivered, or the date of the postmark, if the notice is mailed. Either party can accelerate the date of termination specified by the other by giving written notice of termination in accordance with this paragraph.

On appeal, a divided panel of this court reversed. The panel concluded that two other provisions of the Agreement create an ambiguity as to whether it was terminable only for cause; therefore, summary judgment was inappropriate because extrinsic evidence is admissible to construe this essential contract term. Olander v. State Farm Mut. Auto. Ins. Co., 278 F.3d 794, 798-99 (8th Cir. 2002). Because this decision may affect countless State Farm agency relationships in the Eighth Circuit and nationwide and conflicts with a number of decisions by other courts construing the standard form State Farm agency contract, we granted State Farm's petition for rehearing en banc and now affirm.

The issue on appeal may be quickly summarized. If the Agreement was terminable at will by either party, then Olander has no wrongful termination claim,

---

[1]The HONORABLE RODNEY S. WEBB, Chief Judge of the United States District Court for the District of North Dakota, adopting the Report and Recommendation of the HONORABLE DWIGHT C. H. KAUTZMANN, United States Magistrate Judge for the District of North Dakota.

and his related claims were properly dismissed as well. Under North Dakota law, the construction of a written contract is initially a question of law. Olander argues that extrinsic evidence -- most of it pre-dating his State Farm Agent's Agreement -- establishes State Farm's intent that its agents be terminated only for cause. Under North Dakota law, such evidence is not admissible to vary the terms of an unambiguous written contract. "However, if a written contract is ambiguous, extrinsic evidence may be considered to show the parties' intent." Des Lacs Valley Land Corp. v. Herzig, 621 N.W.2d 860, 863 (N.D. 2001). "A contract is ambiguous when rational arguments can be made for different positions about its meaning. . . . When a contract is ambiguous, the terms of the contract and the parties' intent become questions of fact." Kaler v. Kraemer, 603 N.W.2d 698, 702 (N.D. 1999) (citations omitted). Here, the district court concluded the contract is unambiguous and refused to consider Olander's extrinsic evidence. Our panel disagreed. Whether a written contract is ambiguous must be determined from the four corners of the document, construing the contract as a whole. See Burk v. Nance Petroleum Corp., 10 F.3d 539, 542 (8th Cir. 1993) (applying North Dakota law). Ambiguity is a question of law that we review de novo, just as we review the grant of summary judgment de novo. Kaler, 603 N.W.2d at 702.

Section III of the State Farm Agent's Agreement is entitled "Termination of Agreement." Other than providing that the Agreement terminates upon the death of the agent (which confirms this is a personal services contract), Section III does not specify the *grounds* for termination. It simply provides, "You [the agent] or State Farm have the right to terminate this Agreement by written notice delivered to the other." In many cases, a contract's silence on an issue creates an ambiguity. But in this case, the contract's silence is itself unambiguous. The general rule in this country has long been that a personal services contract of indefinite duration may be terminated at will by either party. See Willcox & Gibbs Co. v. Ewing, 141 U.S. 627, 635-36 (1891);1 RICHARD LORD, WILLISTON ON CONTRACTS § 4.20 (4th ed. 1990). We have applied this general rule in many cases, including Martin v. Equitable Life

Assurance Soc'y of U.S., 553 F.2d 573, 574-75 (8th Cir. 1977), where we held that an insurance agency contract having no fixed term was unambiguously terminable at will under South Dakota law.[2] Likewise, a leading insurance treatise states as the general rule for insurance agency contracts: "If the agency contract fixes no time for its duration, as a general rule, the agency contract may be terminated at any time at the election of either party." 13 ERIC HOLMES, HOLMES' APPLEMAN ON INSURANCE 2D § 99.2, at 788-89 & n.25 (1999). Accord Kaldi v. Farmers Ins. Exch., 21 P.3d 16, 18, 20 (Nev. 2001); Patillo v. Equitable Life Assurance Soc'y of U.S., 502 N.W.2d 696, 699 (Mich. App. 1992); James H. Washington Ins. Agency v. Nationwide Mut. Ins. Co., 643 N.E.2d 143, 147 (Ohio App. 1993).

North Dakota has codified this general rule for contracts of employment. See N.D. CENT. CODE § 34-03-01. The Supreme Court of North Dakota has also applied the rule to personal services contracts, under which agents and professionals who are not employees provide on-going services of indefinite duration. See N. Am. Pump Corp. v. Clay Equip. Corp., 199 N.W.2d 888, 894 (N.D. 1972) (exclusive agency agreement to sell equipment); Myra Found. v. Harvey, 100 N.W.2d 435, 437 (N.D. 1959) (bookkeeping services). That the Supreme Court of North Dakota would apply the general rule to Section III.A. of the State Farm Agent's Agreement is confirmed by Wadeson v. Am. Family Mut. Ins. Co., 343 N.W.2d 367, 371 (N.D. 1984). In Wadeson, a contract between an insurer and its district manager provided, like Section III.A., that it "may be terminated by any party as to its interest by giving

---

[2]Other cases in which we have applied the general rule include Crowell v. Campbell Soup Co., 264 F.3d 756, 761-62 (8th Cir. 2001); Friedman v. BRW, Inc., 40 F.3d 293, 296 (8th Cir. 1994); Engelstad v. Virginia Mun. Hosp., 718 F.2d 262, 266 (8th Cir. 1983); Percival v. Gen. Motors Corp., 539 F.2d 1126, 1129 (8th Cir. 1976); McGinnis Piano & Organ Co. v. Yamaha Int'l Corp., 480 F.2d 474, 479-80 (8th Cir. 1973); Maple Island Farm, Inc. v. Bitterling, 209 F.2d 867, 878 (8th Cir. 1954), cert. denied, 348 U.S. 882 (1954); Meredith v. John Deere Plow Co., 185 F.2d 481, 482 (8th Cir. 1950), cert. denied, 341 U.S. 936 (1951); Moore v. Sec. Trust & Life Ins. Co., 168 F. 496, 498-500 (8th Cir. 1909), cert. denied, 219 U.S. 583 (1910).

written notice to the other," without specifying the grounds for termination. The court held that the contract was terminable at will, not only for good cause.

Thus, the North Dakota general rule establishes that the Agreement's silence as to its duration is, without more, an unambiguous declaration that it is terminable at will by either party. Seeking to avoid the general rule, Olander argues, and the panel majority agreed, that two other provisions of the Agreement create an ambiguity that requires the consideration of extrinsic evidence.

First, Section III.B. of the Agreement provides: "In the event [State Farm] terminate[s] this Agreement, you are entitled upon request to a review in accordance with the termination review procedures approved by the Board of Directors of [State Farm], as amended from time to time." The panel majority surmised that "one rational explanation for the existence of the review procedure is to ensure that any termination was made for good cause, and not capriciously." 278 F.3d at 798. However, two courts have squarely rejected the contention that this provision renders the State Farm Agent's Agreement ambiguous. See Mooney v. State Farm Ins. Cos., 344 F. Supp. 697, 699-700 (D.N.H. 1972); Ex parte Gardner, 822 So.2d 1211, 1219 (Ala. 2001). Another court construed a Farmers Insurance Exchange agency contract as unambiguously terminable at will despite a similar review provision:

> The review board process gives the agent the opportunity to assert that it is not in the best interest of Farmers to sever the agency relationship. It also gives the agent, in appropriate circumstances, a forum in which to argue that the termination was the product of bias or prejudice on the part of the person who made the initial decision to terminate the relationship. . . . Thus, even without a requirement of cause, the review board serves a viable purpose under the contract.

Kaldi, 21 P.3d at 21. Similarly, many other cases have held that an employer's contract termination procedures did not render an employment relationship terminable

only for cause. See, e.g., Taliento v. Portland W. Neighborhood Planning Council, 705 A.2d 696, 699 (Me. 1997); Suburban Hosp., Inc. v. Dwiggins, 596 A.2d 1069, 1076-77 (Md. 1991); Vancheri v. GNLV Corp., 777 P.2d 366, 369-70 (Nev. 1989).

Second, the panel majority relied upon the statement in the Agreement's preamble that the parties "expect that by entering into this Agreement, and by the full and faithful observance and performance of the obligations and responsibilities herein set forth, a mutually satisfactory relationship will be established and maintained." However, this hortatory language may not properly serve to create an ambiguity in an otherwise unambiguous termination provision. See Aramony v. United Way of Am., 254 F.3d 403, 413 (2d Cir. 2001) (holding that recitals in a contract's preamble may be useful in interpreting ambiguous terms but "cannot create any right beyond those arising from the operative terms of the document"). When one operative term in a contract is unambiguous, as the termination provision is here, other provisions must be read so that they are consistent with the plain meaning of the unambiguous term. See Burk, 10 F.3d at 543-44.

To our knowledge, every court but one has interpreted the State Farm Agent's Agreement as being unambiguously terminable at will. See Mooney, 344 F. Supp. 697; Gardner, 822 So.2d 1211; Melnick v. State Farm Mut. Auto. Ins. Co., 749 P.2d 1105, 1110-11 (N.M.), cert. denied, 488 U.S. 822 (1988); Vitkauskas v. State Farm Mut. Auto. Ins. Co., 509 N.E.2d 1385, 1387 (Ill. App. 1987). The one exception is the Ninth Circuit's unpublished opinion in Sandberg v. State Farm Mut. Auto. Ins. Co., No. 97-55971, 1999 WL 369805 (9th Cir. 1999), cert. denied, 528 U.S. 1118 (2000). However, in holding that summary judgment was inappropriate on the terminable-at-will issue, the court in Sandberg applied California law, which, unlike North Dakota law, permits the consideration of extrinsic evidence on the question of whether a contract is ambiguous.

Moreover, the court in <u>Sandberg</u> affirmed the grant of summary judgment in State Farm's favor. Applying the definition of good cause under California law -- "a fair and honest reason, regulated by good faith, that is not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual" -- the court concluded that State Farm had good cause to terminate an agent who had sued State Farm seeking punitive damages for fraud. 1999 WL 369805, at *2. Here, Olander was terminated after he was indicted for murder and refused to take a leave of absence until the criminal proceedings were resolved. Thereafter, a jury convicted him of manslaughter, and he spent many months in prison before the Supreme Court of North Dakota reversed his conviction. Though he was ultimately acquitted after a second trial, State Farm's summary judgment motion was supported by an affidavit from the Director of Agent Licensing and Investigations for the North Dakota Insurance Department averring that, had Olander not lost his agent's license when he was terminated by State Farm, "at the time of his conviction of a felony, the Department would have taken action in some form to suspend and/or possibly revoke his license." These events make it clear that, if the definition of good cause under California law applied in this case (which of course it does not), State Farm would be entitled to summary judgment on the ground that it had good cause to protect its business interests by terminating Olander in August 1996.

Because the State Farm Agent's Agreement was unambiguously terminable at will as a matter of law, the district court properly declined to consider the extrinsic evidence submitted by Olander in granting State Farm's motion for summary judgment. Accordingly, the judgment of the district court is affirmed.

LAY, Circuit Judge, dissenting, with whom HEANEY and McMILLIAN, Circuit Judges, join.

I join in Judge Heaney's dissent.

This controversy, rooted in diversity jurisdiction, involves the question of whether a contract is ambiguous under North Dakota law. Requiring a routine diversity case such as this to be reheard en banc violates the Federal Rules of Appellate Procedure and the longstanding policy of this court.

The Federal Rules of Appellate Procedure state that an en banc "hearing or rehearing is not favored and ordinarily will not be ordered except (1) when consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). The Internal Operating Procedures of the Eighth Circuit elaborate:

> The issue of whether a case should be reheard en banc is separate and distinct from the issue of whether the case should be reheard by the panel. A panel may rehear a case if it questions whether its decision was correct. The court may rehear a case en banc if the case "is of such significance to the full court that it deserves the attention of the full court."

United States Court of Appeals for the Eighth Circuit, Internal Operating Procedures IV.D. (quoting Western Pac. R.R. Corp. v. Western Pac. R.R. Co., 345 U.S. 247, 262-63 (1953)).

The first en banc decision I sat on after appointment to this court in 1966 related to a death sentence under federal law. See Pope v. United States, 372 F.2d 710 (8th Cir. 1967) (en banc). Since that time, this court has averaged approximately six to ten en banc hearings a year. My research shows there have been eight en banc cases in a period of thirty-six years where diversity of citizenship constituted the jurisdictional root for the case to be in federal court. None of those cases, however, were voted to be heard by the full court simply because of the doubtful application of state law. These cases were heard en banc because they involved significant

questions of federal procedure or federal constitutional law. I am unaware of any en banc case from this or any other circuit where the narrow issue presented was the alleged ambiguity of a contract under state law. For example, in <u>Lehman Bros. Kuhn Loeb Inc. v. Clark Oil & Refining Corp.</u>, 739 F.2d 1313 (8th Cir. 1984) (en banc), the legal merits turned on the construction of a contract, but the case was placed en banc because of a dispute over the constitutionality of the portion of the Federal Magistrate Act providing for trial before the magistrate judge with the consent of the parties. <u>Id.</u> at 1314.

When scheduling a case to be heard en banc in any federal court of appeals, one must consider the limited resources of that court in terms of whether the issue itself is so significant that it should require the time of all of the active and participating senior judges involved. Allowing this case to proceed en banc invites every lawyer in every routine appellate case in this circuit to petition for rehearing en banc without a thought as to the significance of the issue involved or the limited resources of the court. Albeit, the court does not have to grant any petition, but the court must read every petition filed.

Many of our sister circuits have deemed questions of state law to be so inconsequential that they have, by rule, established that such a case cannot be reheard en banc.[3] For example, the rule in the Eleventh Circuit reads:

> Alleged errors in a panel's determination of state law, or in the facts of the case (including sufficiency of the evidence, or error asserted in the panel's misapplication of correct precedent to the facts of the case), are matters for rehearing before the panel but not for en banc consideration.

---

[3]Several of our sister circuits include similar admonitions in their local rules and internal operating procedures. <u>See</u> United States Court of Appeals for the Third Circuit, Local Appellate Rule 35.4; United States Court of Appeals for the Fifth Circuit, Rule 35.1; United States Court of Appeals for the Tenth Circuit, Rule 35.2.

United States Court of Appeals for the Eleventh Circuit, Rule 35-3; accord United States Court of Appeals for the Sixth Circuit, Rule 35(c).[4] The Seventh Circuit has written:

> Further, and perhaps most revealing, the petition presents only issues of state law. As such petitioners had an added burden to explain why an issue of [state] law was of such exceptional importance that it warranted review en banc in a federal court, the decision of which would not even be binding on [that state's] courts. A purely state law issue would need to have national significance to warrant such review.

HM Holdings, Inc. v. Rankin, 72 F.3d 562, 563 (7th Cir. 1995). As an example of the type of case with such national significance, the court offers Todd v. Societe Bic., S.A., 21 F.3d 1402 (7th Cir. 1994) (en banc), and Todd v. Societe Bic., S.A., 9 F.3d 1216 (7th Cir. 1993) (en banc), which considered questions of Illinois law in the context of massive products liability litigation.

Here, as in HM Holdings, there is an utter lack of national significance to the state law issue presented. The decision will have limited significance even within North Dakota since the state supreme court can correct any error in the panel's interpretation. In fact, it appears the only basis for the petition for rehearing en banc is that State Farm argues it will affect construction of its contracts on a nationwide basis. It has long been recognized that "[t]he function of en banc hearings is not to review alleged errors for the benefit of losing litigants." United States v. Rosciano, 499 F.2d 173, 174 (7th Cir. 1974); see also Western Pac., 345 U.S. at 262-63.

For this circuit to differ from all of our sister circuits, I respectfully submit, trivializes the federal judicial process. Throughout my tenure on the court, our judges have stressed the need to conserve judicial resources and to avoid en banc hearings

---

[4]In the Ninth Circuit, diversity cases are deemed non-precedential and seldom result in published opinions.

whenever possible. Two senior judges with a combined tenure of seventy years on the court have found the contract was ambiguous. No judge is perfect and we may well be wrong, but that is no reason to place a case such as this before the en banc court. To do so violates the spirit, if not the letter, of the Federal Rules of Appellate Procedure and this court's longstanding policy.

If this court certified the narrow issue involved to the North Dakota Supreme Court, it would indeed be embarrassing, and the court would undoubtedly refuse to grant certification. Yet, such an effort to certify would be far more desirable than utilizing the limited resources of the full court of appeals to guess what the North Dakota Supreme Court would do. The merits of the case should not in any way control the voting of the active judges to place this case en banc. As a diversity case applying North Dakota law in a particularly fact-bound context, no other court in the country is bound by this decision, including the North Dakota Supreme Court. In addition, my limited research discloses that this is the first case in the United States to ever address en banc a routine question of whether a contract is ambiguous under state law. This fact alone mandates reconsideration of our en banc order as being improvidently granted.

It has been said that this case is important because it is a ruling of this circuit and thus becomes the law of this circuit. Such an argument makes little sense. This argument misunderstands the basic principle of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Our ruling must follow the law of the state from which this case arises. It does not affect the law of any other state. The Supreme Court of North Dakota may well change our ruling tomorrow.

Since this case has such little precedential or national significance, the court should not have heard the case en banc. For these reasons, I respectfully dissent.

-11-

HEANEY, Circuit Judge, dissenting, with whom LAY and McMILLIAN, Circuit Judges, join.

In reviewing a diversity case en banc, our only responsibility is to decide the case according to the laws of the relevant state, in this case, North Dakota. It is not, as the majority suggests, our task to determine whether State Farm Insurance Company can terminate agents' contracts in any state without cause, any more than it is our duty to protect the agents who have spent years building a successful agency for themselves, only to have their life's work taken away from them without cause. National uniformity is not and never has been a goal of federal courts in interpreting contracts in diversity cases. We remain convinced that the original panel decided the matter correctly, and that the district court erred by granting summary judgment to State Farm and denying Brian Olander's motion to set aside the judgment pursuant to Fed. R. Civ. P. 60(b). We therefore dissent.

**Background**

We summarize the history of this case to highlight aspects of the matter that the majority did not address. In 1979, Brian Olander became a trainee agent for State Farm and entered into an agent's agreement in 1981. By the terms of the agreement, Olander was an independent contractor authorized to represent State Farm in Mandan, North Dakota. For seventeen years he was very successful. By 1996, he had secured over 5,000 active policyholders, and his take-home commissions were approximately $200,000 a year. In all his years with State Farm, Olander delivered exemplary service to his customers and provided large profits and fierce loyalty to State Farm. He received no adverse ratings from State Farm.

On August 16, 1996, Olander was arrested for homicide after an altercation with his neighbor. Thereafter, State Farm offered Olander an <u>unpaid</u> leave of absence with the following conditions:

-12-

State Farm would service the business assigned to your account, and <u>you would receive no compensation during the term of the leave of absence.</u> State Farm would service the business from a company facility, and you would remove all signs from your current office which identify State Farm.

You would not identify yourself as a State Farm Agent, nor would you contact any State Farm policyholders in regard to insurance. . . .

. . . .

If you are interested in such a leave of absence arrangement, which we would anticipate would continue no longer than the resolution of the criminal prosecution pending against you, but <u>which could be terminated by either of us at any time</u> (thus terminating your Agent's Agreement), please let me or Lou Santoro know by August 30, 1996, and we will prepare an appropriate amendment to your Agent's Agreement.

. . . . If I have not heard from you by August 30, we will take steps to terminate your Agent's Agreement effective August 31, 1996.

(J. A. at 69 (emphasis added)). Olander refused to accept the proposal, and State Farm terminated the agent's agreement. It subsequently seized Olander's business records, computers, and other policy information, and his policies were assigned to other agencies in the area.

Olander's murder trial commenced in April 1997. The jury returned a verdict, finding Olander guilty of manslaughter and acquitting him of murder. In March 1998, the North Dakota Supreme Court reversed Olander's conviction because of instructional error on the issue of self-defense. He was tried a second time and acquitted of all charges. By this time, however, he had lost his valuable agent's agreement, and without an insurance company sponsor, he could not be licensed as an insurance agent.

-13-

In 1999, Olander instituted an action against State Farm alleging that: (1) the termination of his agent's agreement constituted a breach of contract; (2) State Farm tortiously interfered with the business relationship he developed with his clients; and (3) State Farm was unjustly enriched by his termination. State Farm promptly filed a motion for summary judgment, which was granted by the magistrate on February 7, 2001. Thereafter, the district court adopted the magistrate's report. Olander then filed a motion to set aside the judgment pursuant to Fed. R. Civ. P. 60(b) based on newly discovered evidence and failure to make disclosure required by discovery. The district court denied both motions, and Olander appeals the district court's summary judgment ruling on his breach of contract claim and its denial of his 60(b) motion.

**Discussion**

The majority holds that the independent agent's agreement was terminable at will by State Farm with or without cause. We disagree with that conclusion because the majority ignores North Dakota law, which requires that any ambiguity in a written agreement be resolved by considering the four corners of the agreement. The majority looks only at the termination clause and disregards the preamble and a contract provision that provides for a review following termination.

The North Dakota Supreme Court has given a succinct summary of the law relating to the interpretation of written agreements:

> The construction of a written contract to determine its legal effect is generally a question of law. Pamida, Inc. v. Meide, 526 N.W.2d 487, 490 (N.D. 1995). A court must interpret a contract to give effect to the mutual intention of the parties as it existed at the time of contracting. N.D.C.C. § 9-07-03; Pamida, at 490. In interpreting a written contract, a court should ascertain the intention of the parties from the writing alone if possible. N.D.C.C. § 9-07-04; Pamida, at 490. A written agreement supersedes any prior oral agreements or negotiations between

-14-

the parties in the absence of any ambiguity. <u>Norwest Bank North Dakota, Nat'l Ass'n v. Christianson</u>, 494 N.W.2d 165, 168 (N.D. 1992).

> A contract is ambiguous when rational arguments can be made for different positions about its meaning. <u>Felco, Inc. v. Doug's North Hill Bottle Shop, Inc.</u>, 1998 ND 111, P12, 579 N.W.2d 576. Whether or not a contract is ambiguous is a question of law. <u>Moen v. Meidinger</u>, 547 N.W.2d 544, 547 (N.D. 1996). Determining an ambiguity exists is merely the starting point in a search for the parties' intent because an ambiguity creates questions of fact to be resolved using extrinsic evidence. <u>Id.</u> When a contract is ambiguous, the terms of the contract and parties' intent become questions of fact. <u>Wachter Development, L.L.C. v. Gomek</u>, 544 N.W.2d 127, 131 (N.D. 1996).

<u>Kaler v. Kraemer</u>, 603 N.W.2d 698, 702 (N.D. 1999).

The North Dakota Century Code instructs that when interpreting a contract, "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9-07-06. It is also well settled under North Dakota law that "[t]he intention of the parties to a contract must be gathered from the entire instrument, not from isolated clauses, and every clause, sentence, and provision should be given effect consistent with the main purpose of the contract." <u>Nat'l Bank of Harvey v. Int'l Harvester Co.</u>, 421 N.W.2d 799, 802 (N.D. 1988).

State Farm has persuaded the majority to rely upon the following language within the insurance agreement to assert that the contract is unambiguous in instructing that the agency relationship with Olander was at all times terminable at will:

A.    This agreement will terminate upon your death. You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address.

-15-

The date of termination shall be the date specified in the notice, but in the event no date is specified, the date of termination shall be the date of delivery if the notice is delivered, or the date of the postmark, if the notice is mailed. Either party can accelerate the date of termination specified by the other by giving written notice of termination in accordance with this paragraph.

This section, on its face, sets forth the procedure by which the parties to the agreement must give notice of termination. It says nothing about whether the termination must be for cause or may be at will. Certainly, rational arguments can be made for different positions about its meaning. North Dakota's parol evidence rule recognizes this reality by allowing "proof of the existence of any separate oral stipulations or agreements as to matters on which a written contract is silent." Schue v. Jacoby, 162 N.W.2d 377, 382 (N.D. 1968); see also Putnam v. Dickinson, 142 N.W.2d 111, 119 (N.D. 1966).

Initially, paragraph B of section III, which immediately follows the provision at issue, entitles the agent to a review following termination of the agreement by State Farm.[5] While by no means foreclosing other interpretations, one rational explanation for the existence of the review procedure is to ensure that any termination was made for good cause, and not capriciously. Cf. Kaldi, 21 P.3d at 21 (finding the review procedure offers "the agent the opportunity to assert it is not in the company's best interest of the insurer to sever the agency relationship . . . ."). In addition, the preamble to the contract lends further support to the plaintiff's argument. See United States v. Tilley, 124 F.2d 850, 854 (8th Cir. 1941). Among a number of other

---

[5]The provision reads:

B.    In the event we terminate this Agreement, you are entitled upon request to a review in accordance with the termination review procedures approved by the Board of Directors of the Companies, as amended from time to time.

provisions, it states: "The Companies and the Agent expect that by entering into this Agreement, and <u>by the full and faithful observance and performance of the obligations and responsibilities herein set forth, a mutually satisfactory relationship will be</u> established and <u>maintained</u>." <u>Id.</u> (emphasis added). This language is far from dispositive. It is, however, additional textual support for plaintiff's argument located within the four corners of the document. It suggests that if the parties meet their contractual obligations, the relationship will continue. Such an interpretation is inconsistent with State Farm's assertion that the agreement unambiguously allows for termination regardless of the parties' performance.[6]

---

[6]In 1966, State Farm amended its agent's agreement to delete from the termination clause in effect at that time the words, "with or without cause." The reasons for this change were set forth by Henry Keller, Jr., the agency vice president for State Farm at the time the decision to revise the termination clause was made. In the detailed affidavit, Keller swore under oath as follows:

> 13.  In order to obtain the agent perspective on issues which needed to be addressed in the new contract, we set up a program to obtain information from the agents. This informational program revealed a major concern [on] the part of the agents that the company might terminate them arbitrarily or capriciously, without good reason. If that were to occur, then the agents' entire investment in his agency would be lost. We determined that we needed to address that concern, in order to assure that agents would be willing to make the substantial investment in time, effort and money contemplated by our independent contractor/career agent approach.

> 14. We took steps in the AA 660 contract to address that concern. First, we removed the words "with or without cause" from the termination provision that was in the LA 540 form. Second, we added a termination review provision, which would entitle any agent whose agreement had been terminated by the company to a review of the decision. . . .

> 15.  We considered adding provisions which would specify the

-17-

The majority cites three cases for the proposition that the Supreme Court of North Dakota would apply the North Dakota Code provision relating to personal services to insurance contracts and permit insurance agency contracts to be terminable at will. We are not persuaded that these cases support the view that the North Dakota Supreme Court would accept the majority's view in this case.

In Myra Foundation v. Harvey, 100 N.W.2d 435 (N.D. 1959), the North Dakota Supreme Court held that an agreement to provide bookkeeping services had been formed by the parties through an exchange of letters. The plaintiff brought an action to recover possession of certain books and records that it alleged had been unlawfully detained by the defendant. The defendant answered that he had legal possession of the books and records by virtue of a lien for services performed for the plaintiff and counterclaimed for the reasonable value of the services. The case was tried, and the defendant obtained a judgment on his counterclaim. Plaintiff moved for judgment notwithstanding the verdict or for a new trial. The motion was denied and the plaintiff appealed. The North Dakota Supreme Court remanded the case on a damage issue and simply noted "that the contract, neither expressly nor impliedly, fixes any time for its duration. Either party might therefore terminate the contract upon giving reasonable notice to the other." Id. at 437. No argument was made by either party

reasons for which termination would occur, but . . . opted for the approach . . . which gave agents the protection of a due cause contract, but with more flexibility in defining the cause.

16. The removal of the words "with or without cause" from the termination provision was a necessary part of this exercise. We knew that it would be neither logical nor consistent to keep a provision stating that we could terminate "with or without cause" right above a termination review provision to guard against arbitrary and capricious terminations.

(J.A. at 714-15.)

-18-

on this issue, and the only citation by the North Dakota Supreme Court was to 17 C.J.S. Contracts § 398 and 12 Am. Jur. (Contracts, Sec. 305) 860.

In North American Pump Corp. v. Clay Equipment Corp., 199 N.W.2d 888 (N.D. 1972), the plaintiff, a sales and service corporation engaged in selling farm equipment, asserted that an oral contract with the defendant, a manufacturer, gave it the exclusive right to sell the defendant's products within the northern half of North Dakota and a small area in northwestern Minnesota. The jury returned a verdict for the plaintiff in the sum of $3,000. The North Dakota Supreme Court affirmed the judgment after eliminating interest on the amount prior to the verdict. The only reference by the North Dakota Supreme Court to the issues facing us is a statement that because a contract neither expressly nor impliedly fixed the time of duration, "the agreement could have been terminated by either party on reasonable notice [and thus] . . . the agreement was not within the statute of frauds, even though it was not terminated within one year of its commencement." Id. at 894.

In Wadeson v. American Family Mutual Insurance Co., 343 N.W.2d 367 (N.D. 1984), the plaintiff brought an action against American Family, alleging his agency had been terminated without cause. There was no indication in the case that there was a written agreement between the parties and certainly no indication that the agreement contained any provisions similar to those contained in the instant case. The North Dakota Supreme Court referred to the North Dakota Code, stating: "An employment having no specified term may be terminated at the will of either party on notice to the other . . . ." Id. at 369.

State Farm contends that North Dakota law prohibits the use of parol evidence to vary the terms of a written contract where, as here, the parties agree that the contract contains the entire agreement. This argument is without merit. Putnam v. Dickinson held parol evidence was admissible where a deed was silent on a matter. The court indicated the parties did not intend the agreement "to be a complete and

final statement of the whole of the transaction between them," and the extrinsic evidence was consistent with the terms of the agreement. Putnam, 142 N.W.2d at 119. However, the North Dakota Supreme Court has never held this to be the only circumstance where parol evidence is admissible in a contract dispute. For instance, in Jorgensen v. Crow, 466 N.W.2d 120 (N.D. 1991), the state supreme court held the trial court had erred in admitting parol evidence "that varied the purchase price of the contract for deed." Id. at 124. However, it found no error in the trial court's admitting "a prior oral agreement that the yearly payment due under the contract for deed would be satisfied by one season's use of the pasture because that testimony does not contradict a term of the written contract." Id. The court has explicitly stated that, when an ambiguity exists, "parol evidence is admissible to explain existing essential terms or to show the parties' intent." Bye v. Elvick, 336 N.W.2d 106, 111 (N.D. 1983). That is the situation we are presented with here. Whether or not the agent's agreement expressed the entire transaction between State Farm and Olander is of no consequence.

In the instant case, we are presented with a contractual provision that is silent on the subject of cause. Both parties offer plausible explanations for this silence and Olander has directed us to provisions within the agreement itself supporting his interpretation. Therefore, reasonable persons could rationally argue that the termination provision merely sets forth the procedure for giving notice of termination without specifying whether or not termination requires cause. "Because reasonable people could make rational arguments in support of contrary positions . . . there was a genuine issue of material fact rendering summary judgment on this issue inappropriate." Pamida, Inc. v. Meide, 526 N.W.2d 487, 493 (N.D. 1995). In light of this conclusion, it is unnecessary to address Olander's claims regarding his Rule 60(b) motion.

Because it is well settled under North Dakota law that the entire contractual instrument, inclusive of all clauses and provisions, must be considered to determine

the intention of the parties, we would remand this matter to the district court for a trial on the merits.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.